People of the State of Illinois, Plaintiff-Appellee, v. George Newberry, Defendant-Appellant.

**Gen. No. 54,194.**

First District, Second Division.

July 21, 1970.

Rehearing denied September 9, 1970.

 

Patrick A. Tuite, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Anthony M. Montemurro, and Alfred L. Levinson, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Defendant, indicted for the crime of murder, was found guilty at a bench trial of the crime of voluntary manslaughter, and sentenced to a term of four years to fifteen years in the penitentiary. He appeals.

The evidence adduced by the People shows that in the late afternoon of September 4, 1968, the defendant entered a tavern located on West Diversey Avenue in Chicago and took a seat at the bar next to Dorothy Brogan. Sometime after 8:00 that evening patrons at the tavern heard a noise which sounded like a "cannon cracker" or a firecracker. One of the patrons testified that after the noise was heard, he noticed the defendant place a gun on the bar, and another testified that he observed the deceased lying on the floor with a pool of blood around her head and shoulders. After the defendant placed the gun on the bar, one of the patrons picked it up, and defendant later requested its return.

Chicago Police Officer Charles Roberts testified that he arrived at the scene about 8:25 that evening. After viewing the deceased's body on the floor, the officer asked, "Who did it?" and in response the defendant stated, "I did" and "I shot her." The officer's attention was then directed to the weapon which had been placed on top of a beverage cooler. The gun, which contained one spent shell and five live shells when recovered by the officer, was admitted into evidence.

Officer Roberts further testified that there were several persons in the tavern at the time the defendant made the statement that he shot the deceased, and the officer testified that he noted and recorded in his report the names and addresses of the other persons present. Defendant moved to strike the officer's testimony concerning the defendant's statement on the ground that the People failed to include in its list of witnesses the names and addresses of all persons present when the statement was made. The motion was denied.

Detective Rocco Rinaldi of the Chicago Police Department Homicide Unit testified that he and defendant had a conversation at the scene during which defendant related that he had been seeing the deceased socially for three years, that the deceased was in the process of breaking off the relationship, that the defendant had given the deceased a great deal of money over a period of time, and that the defendant had left his wife for the deceased. The witness also testified that the defendant told him that immediately prior to the shooting the defendant wished to discuss with the deceased the continuance of their relationship, that the deceased refused to speak with him about the matter, and that he shot her. The detective testified that the defendant told him that after the shooting, he stood over the body and said, "I told you I was going to shoot you." The defendant then stated to the witness, "If [a patron] didn't take that gun away from me, I would have shot myself."

324

Detective Rinaldi also testified that he and three other police officers later had another conversation with the defendant at police headquarters. During the latter conversation the defendant related that he had taken the gun into the tavern with the intention of shooting the deceased. He stated that he had been in the tavern about four hours prior to the shooting, and that he did not know the deceased was present until after he entered the premises. The defendant again moved that the testimony of Detective Rinaldi be stricken on the ground that the names of two of the officers present at the time of the conversation did not appear on the list of witnesses supplied by the People. The motion was denied.

It was stipulated that the deceased died of a gunshot wound in the head, the bullet entering the left side of the face on a line near the left temple at a point between the left eye and left ear, and exiting the head at the center of the top.

The evidence for the defendant consisted of the testimony of a police detective and of the defendant himself. Detective Charles Wos testified generally as to the condition of the deceased's body at the time he observed it at the scene. He also testified that there was a bullet hole in the ceiling of the establishment above the bar, about four to six feet on an angle from the position where the deceased had been seated. He expressed the opinion that the bullet which killed the deceased traveled in an upward direction and that the weapon was positioned somewhat below the point where the bullet had entered the head.

Defendant testified that he and the deceased had dated about three years. Prior to the day of the shooting, defendant had moved out of his apartment and was living out of his automobile. He testified that he owned the gun used in the shooting for several years and that after moving out of his apartment he carried

325

the weapon on his person because he did not wish to leave it in the automobile; he also stated that he carried the weapon because he had been contemplating suicide for some time, but had not yet "worked up the nerve to do it."

After he entered the tavern on the evening of the occurrence, he noticed the deceased seated at the bar and took a seat to her left; he stated that he did not expect to see her at the tavern on that date. He purchased drinks for the deceased and personally consumed seven to ten bottles of beer. He testified that he later requested the deceased to leave the tavern with him for something to eat, but the deceased refused. The defendant stated that he then said to the deceased, "One of these days I am going to shoot myself right through the head," to which the deceased replied in an obscene manner, telling him that she did not care what he did.

Defendant testified that the reply made by the deceased "was the straw that broke the camel's back" and that "I was going to kill myself right then and there." He testified that he took the gun from his right-hand pants pocket and began to raise it to his head when it discharged. He stated that he did not "cock the gun," and that he did not recall squeezing the trigger. Defendant testified that he then noticed the deceased lying on the floor, that he placed the gun on the bar, and that when he went to arrange the deceased's clothing which was in disarray from the fall, he noticed that she was injured. He testified that he then heard someone state that he had shot the deceased, and that when he turned to get the weapon from the bar, he was pushed away and one of the patrons took the weapon. He testified that before the police arrived, he requested the return of the weapon so that he could shoot himself. Defendant denied telling the police that he entered the tavern with the intent of killing the deceased.

Defendant initially contends that there is no evidence to support a conviction for voluntary manslaughter, in that the record supports a conclusion that he was either guilty of murder, or that the homicide was accidental. We disagree.

■ There is evidence in the record to support a finding of guilty of manslaughter. The defendant had been seeing the deceased for approximately three years prior to the homicide; defendant had left his wife for the deceased, and he had given the deceased money during the period of their relationship. The deceased had severed the relationship several weeks before the shooting and had been avoiding the defendant in the interim. On the evening of the shooting, defendant had attempted a reconciliation with the deceased, and after the deceased had refused to accede to his wishes, he threatened to shoot himself through the head. The reply of the deceased was made in a rude manner and obscene language, the deceased telling the defendant that she did not care what he did. Immediately thereafter the defendant drew his gun and shot the deceased.

The trier of fact could reasonably have found from this evidence that defendant, already in a depressed emotional state and having contemplated committing suicide, became so aroused and impassioned by the deceased's attitude and by the nature of her reply to his request, that he immediately drew the gun from his pocket and shot her in the head. The evidence supports the finding of manslaughter. People v. Sain, 384 Ill 394, 51 NE2d 557; People v. Green, 23 Ill2d 584, 179 NE2d 644.

The cases cited by the defendant in support of his position are distinguishable on their facts. See People v. Washington, 27 Ill2d 104, 187 NE2d 739; People v. McMurry, 64 Ill App2d 248, 212 NE2d 7; People v. Johnson, 54 Ill App2d 27, 203 NE2d 283.

Defendant secondly contends that the trial court erred in refusing to strike the testimony relating to the statements made by him to the police officers after the shooting. He argues that he was informed of only one of those statements, and also that the names and addresses of all witnesses to the statements were not furnished on the People's list of witnesses as requested by defendant's pretrial motion and as is required by statute.

The record reveals that three separate statements were made by the defendant to the investigating police officers, to the effect that he shot the deceased. The first statement was made to Officer Roberts when he initially arrived at the scene of the shooting, and in the presence of a number of patrons who were in the tavern. The second statement was made to Detective Rinaldi, in his presence alone. The third was again made to Detective Rinaldi, in the presence of three other officers. The second statement, made in the presence of Detective Rinaldi alone, is not subject to defendant's criticism. The detective's name did appear on the People's list of witnesses, and he was the only person present when the defendant made that statement.

■ ■ With regard to the other two statements, the trial judge erred in failing to strike the testimony. As to the first statement, the reply made by the defendant to Officer Roberts' question to the patrons when he first entered the tavern, was apparently loud enough so that others in the tavern beside the officer could hear it. The names and addresses of the other persons present in the bar were recorded by the officer in his report, yet they did not appear on the People's list of witnesses. As to the third statement, it was given in the presence of four officers, whereas only two of the names appeared on the list of witnesses.

■ Section 114–10 of the Criminal Code provides that the People, on timely motion by the defendant, must supply the defendant with a list of the names and addresses of all witnesses to statements made by him. The statute further provides that failure to comply with the provisions thereof will render a statement inadmissible as evidence. Ill Rev Stats 1967, c 38, par 114–10. The terms of the statute are mandatory, and failure of the People to strictly comply therewith will render a given statement inadmissible. People v. DuPree, 26 Ill2d 320, 186 NE2d 237.

■ Under the circumstances of this case, failure of the trial court to strike the testimony relating to the first and third statements worked no prejudice to the defendant. Those statements involved admissions by the defendant that he shot the deceased, and were merely cumulative of the testimony of Detective Rinaldi concerning the second statement which was made to him alone. The defendant admitted on direct examination that he shot Dorothy Brogan, which was as much as he admitted in his statements to the officers. There was sufficient evidence adduced from which, without those two statements, the trier of fact could find the defendant guilty of manslaughter. People v. Pelkola, 19 Ill2d 156, 166 NE2d 54.

There was no reversible error. The judgment is affirmed.

Judgment affirmed.

McCORMICK, P. J. and LYONS, J., concur.