THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* REX MATREL BOOTHE, Defendant-Appellant.

(No. 72-100;

Second District—September 7, 1972.

*Rehearing denied October 4, 1972.*

Linda West Conley, of Defender Project, of Chicago, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Defendant appeals from a conviction of murder and a sentence of 20-30 years in prison, following a jury trial. He complains of the admission of a confession, the giving of instructions elaborating on the meaning of "reasonable doubt", and the failure to give his tendered instruction as to the lesser included offense of manslaughter.

A preliminary issue is raised by the State's motion to dismiss the appeal for alleged abuse of the trial court's discretion in allowing defendant some 24 extensions of time to file the record, covering an approximate 6-year period. It is argued that, while the various orders recite that the extensions were "for good cause shown", there are no supporting findings of fact. While conceding that the statute ( Ill. Rev. Stat. 1965, ch. 110, sec. 101.27(10), as amended), did not require notice, the State argues that the failure to give it the opportunity to oppose the extensions is unjust. Prejudice is stated in the general terms of the difficulty in retracing witnesses in several states in the event a retrial is ordered.

■■ We cannot in any way express approval of this great delay. There is a duty, shared by judge, prosecutor and defense attorney, to avoid taking undue time to advance proceedings on appeal. Notice of orders continuing the time in which the record must be filed should, in fairness, be given to opposing counsel even though the rule does not explicitly require notice. But it was also the duty of the State's Attorney to follow the case. We cannot penalize the defendant and deprive him of his appeal on a record which does not clearly show that he is to blame for the inordinate delay. The motion to dismiss is therefore denied.

■■ From our review of the record we conclude that the evidence warranted the giving of an instruction on voluntary manslaughter as the lesser included offense of murder; and that the court's refusal to give the instruction was prejudicial error, requiring that the case be reversed and remanded for a new trial.

The eleven-year-old daughter of the deceased testified that there was an argument between her mother and defendant over money; that defendant, after first striking deceased and threatening to kill her, stabbed

her with a butcher knife which he took from a drawer in the kitchen. The daughter then fled.

Defendant testified that the deceased came after him with a knife. He ran to the stairs where she caught him by the coat and cut him twice on the left hand. He said that they struggled, "bumping" and "tying up" each other, as he ducked and dodged trying to knock her off balance so she couldn't control the knife. She slipped with the knife under her and did not get up. He took the knife back to the kitchen table. As he started to leave he stepped on a second knife which he picked up and threw toward the kitchen sink. There was also evidence that deceased had been involved in other incidents with knives and that this was known to the defendant.

Defendant's testimony at trial conflicted with the statement he was alleged to have given to the police after interrogation, admitted after a preliminary hearing on the issue of voluntariness. In the statement he stated that he grabbed a knife before the deceased could reach it and stabbed her. He also referred to the two knives as those that he used.

There was evidence that in the melee deceased suffered some fifty-three separate wounds, lacerations or abrasions, some quite superficial. One was described as a wound which penetrated the pleural cavity and the apex of the right lung, severing a major artery and becoming the principal cause of death.

■■ Defendant's testimony at trial that he was attacked by the deceased with a knife while they were fighting was sufficient to require the giving of the tendered instruction on the lesser included offense of voluntary manslaughter. Even though the evidence was conflicting and defendant's own testimony was impeached by his statement, his trial testimony, if believed by the jury, was sufficient to create an issue of fact as to whether he acted under a sudden and intense passion resulting from a serious provocation as defined in the statute. (Ill. Rev. Stat. 1965, ch. 38, sec. 9—2(a); *People v. Binion* (1971), 132 Ill.App.2d —, 267 N.E.2d 715, 716, 717; see also *People v. Papas* (1942), 381 Ill. 90, 95, 96.) The fact that defendant relied on the defense of accidental death does not preclude him from raising the issue since he is entitled to the benefit of any defense based on the evidence even if inconsistent with his own testimony. *People v. Papas*, 381 Ill. 90, at page 95.

We do not therefore find it necessary to decide whether the giving of People's Instruction No. 10 which elaborated on the meaning of "reasonable doubt" was reversible error. On retrial, this issue will be controlled by *People v. Cagle* (1969), 41 Ill.2d 528, 536.

We also do not rule upon defendant's claim that the evidence failed

404

to establish that the confession was voluntary and that defendant was denied the right to have counsel present during interrogation under *Escobedo v. Illinois* (1964), 378 U.S. 478. On the record before us we would find no abuse of discretion by the trial court in denying the motion to suppress the confession. However, the issue must be resolved on the facts as they are presented upon the retrial and not upon this record.

The judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

ABRAHAMSON and T. MORAN, JJ., concur.