THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CORA SUE COLLINS, Defendant-Appellant.

First District (3rd Division)   No. 62361

Opinion filed October 21, 1976.

James Geis and Victoria J. Meyers, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Michael E. Shabat, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Following a trial without a jury, the defendant Cora Sue Collins, was found guilty of the murder of Enoch Jemison and was sentenced to the penitentiary for a term of 14 to 20 years. On appeal she contends that her conviction should be reduced to voluntary manslaughter.

The homicide occurred in a Chicago restaurant at 7 a.m. Both Collins and Jemison lived near the restaurant. A customer, Richard Temperele, testified that when he and his 15-year-old son entered the restaurant to have breakfast he noticed Collins and Jemison sitting at the counter. They were arguing. Collins wanted to fight and called Jemison a vulgar name. Jemison indicated that he wanted to be left alone. Collins got up, went outside and yelled for him to come out but he refused. She re-entered the restaurant and the argument continued. Temperele heard a shot, saw Jemison arise from the stool on which he was sitting, take two steps and fall. Temperele saw a gun in Collins' hand and he went out of the

restaurant and called the police. As he returned he saw her enter a nearby building. He gave the police this information and they arrested her.

Another customer, Jimmie Hackman, testified that as he approached the restaurant, he saw the defendant standing outside holding a gun and calling "Come on out" to someone inside. Hackman asked her if there was going to be any trouble and she said there was. Despite this, Hackman entered the restaurant and sat only a short distance from Jemison. The defendant then came inside and Jemison told her that he was not going out because he did not want any trouble. She said that he would either leave or she would kick him out. Jemison replied, "You're not going to kick me out. You might kill me." She replied, "I will do just that," and pulled a gun and fired a shot. Jemison arose, said "you shot me" and took two steps before he fell. She then pointed the gun toward his head and ordered him to get up but he could not.

Hackman told the man working in the restaurant to telephone the police. As the latter raised the phone, the defendant said, "If you do, I will kill you." Hackman then left the restaurant and went to a police station where he reported the shooting.

It was stipulated that Jemison died from a bullet wound which penetrated his abdominal artery, stomach and bowel and that a test indicated that his blood contained .156 milligrams percent of ethynol. It was further stipulated that Collins appeared to be intoxicated when she was arrested and that the investigating officers did not recover a weapon.

The defendant testified that she had gone to several taverns the evening prior to the shooting and had consumed many drinks. She said she arrived at the restaurant about 4:30 a.m. and noted Jemison nearby. He spoke to her in abusive language and followed her into the restaurant. She began to drink from a bottle of liquor and Jemison continued his abusive comments. She said that she was intoxicated when she left the restaurant and Jemison followed. Her recollection was not precise, but it is to be gathered from the record that she claimed Jemison struck her at this time. She did not recall anything else until she was arrested. However, she described certain events which had taken place sometime prior to the shooting when she had ordered Jemison to leave her grandparents' front porch while he was drinking. She testified that she feared guns because she had been previously shot, and that she never carried one.

The defendant argues that she and Jemison had been drinking thus increasing their combativeness and that they engaged in an extended altercation which involved abusive language and his stiking her. She claims that these factors created a sudden and intense passion in her which resulted in her shooting him and that she should have been found guilty of voluntary manslaughter. Ill. Rev. Stat. 1973, ch. 38, par. 9—2(a).

The defendant recognizes that it is generally held that mere words are insufficient provocation to reduce a crime of murder to voluntary manslaughter. (*E.g., People v. Free* (1976), 37 Ill. App. 3d 1050, 347 N.E.2d 505; *People v. Matthews* (1974), 21 Ill. App. 3d 249, 314 N.E.2d 15.) However, she maintains that under appropriate circumstances "mere words" may reach a level of mutual quarrel, thus creating a provocation serious enough to support a voluntary manslaughter conviction. In *People v. Newberry* (1970), 127 Ill. App. 2d 322, 262 N.E.2d 282, the defendant was convicted of voluntary manslaughter and he then argued that he was guilty of murder alone. The appellate court in reviewing the evidence noted the sudden and intense passion engendered by the deceased's verbal abuse of the defendant. When this was viewed in conjunction with the latter's depressed mental state, the court found that these factors could reasonably support the conclusion that the defendant's conduct was sufficient to sustain his conviction because he acted under an intense and sudden passion when he shot the deceased. (See also *People v. Ahlberg* (1973), 13 Ill. App. 3d 1038, 301 N.E.2d 608; *People v. Curwick* (1975), 33 Ill. App. 3d 757, 338 N.E.2d 468.) Each must be evaluated upon the evidence presented to the trier of fact to determine if the acts of the deceased would arouse a sudden and intense passion in a reasonable person. *People v. Arnold* (1974), 17 Ill. App. 3d 1043, 309 N.E.2d 89.

While Jemison and Collins did argue, it was the latter who sustained the quarrel. Jemison's refusal to continue the quarrel outside the restaurant and his other statements showed his desire to terminate the altercation. Her testimony that she was struck and cursed at by Jemison earlier that morning as well as her testimony that she had at one time ordered Jemison from her grandparents' home involve questions of credibility. The related events were remote to the time of the shooting; and the trial court could have considered them as unsupportive of her claim that she acted from a sudden and intense passion. *People v. Akins* (1976), 39 Ill. App. 3d 908, 351 N.E.2d 366; *People v. Wilson* (1972), 3 Ill. App. 3d 481, 278 N.E.2d 473.

The evidence presented does not establish a basis for reducing the defendant's conviction from murder to voluntary manslaughter. The judgment is affirmed.

Affirmed.

McNAMARA and McGLOON, JJ., concur.