THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ALBERT CAUSEY, Defendant-Appellant.

Third District   No. 77-277

Opinion filed November 30, 1978.—Rehearing denied January 2, 1979.

Robert Agostinelli and Michael Filipovic, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong and Terry A. Mertel, both of State's Attorney's Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Following a jury trial in the Circuit Court of Peoria County defendant was convicted of rape and murder and sentenced to two 50- to 75-year prison terms to be served concurrently.

On the afternoon of April 28, 1976, Peoria police responded to defendant's call seeking an ambulance, and upon arriving at the apartment of defendant's ex-wife, found the woman dead lying on the bed in the arms of the sobbing defendant. Initially defendant told the police he had found the decedent already dead, but the next day he gave a statement detailing his involvement in her death.

About six months before her death, while married to defendant, the victim began having an affair with one of her co-workers, Leon Lowe. The victim divorced defendant 1½ months prior to her death, and she was given custody of the couple's young child.

According to defendant's statement, concern about his baby prompted him to start looking for his ex-wife early on the morning of April 28. Being unable to locate her, defendant went to the victim's apartment at about 1:30 p.m. and let himself in with a key. While waiting

for his ex-wife, defendant got out an axe handle which he said he used to scare her. When he heard the victim arriving defendant hid in a closet. While in the closet defendant heard the victim place a call to Lowe in which she said defendant was dumb and stupid. Defendant claims to have been upset by these statements and when the victim started swearing at the baby he came out of the closet, picked up the axe handle, unplugged the phone and pulled her towards him.

According to defendant he and his ex-wife then had a "normal conversation" for about 15 minutes, until she refused to change the baby's dirty diaper. A quarrel ensued in which the victim asked defendant to leave and pushed him several times while holding the baby in her arms. Defendant responded by hitting the victim on the side of the head with a vase filled with pennies. The woman dropped the baby, but continued attacking defendant, hitting him, biting him on the chest and tearing his shirt. Defendant claims he tried to fight her off, but he was unsuccessful until he pinned her up against the wall by placing his forearm on her neck. The victim lost consciousness and fell to the floor knocking a lamp off an end table. Defendant had intercourse with her while she was lying unconscious on the floor. He then placed her on the bed, straightened up the apartment, asked several neighbors if they had seen her and, after several attempts to revive her, he called an ambulance.

■■ At the instruction conference defense counsel requested instructions on voluntary and involuntary manslaughter, and these were denied.

Defendant contends that the court erred in refusing to give the requested instructions. It is well settled that if there is evidence in the record which, if believed by a jury, would reduce the crime to manslaughter, a manslaughter instruction tendered by defendant must be given. (*People v. Canada* (1962), 26 Ill. 2d 491, 187 N.E.2d 243; *People v. Harris* (1956), 8 Ill. 2d 431, 134 N.E.2d 315.) It is equally well settled however, that such an instruction should not be given if the evidence clearly demonstrates that the crime was murder and there is no evidence to support a conviction of manslaughter. *People v. Handley* (1972), 51 Ill. 2d 229, 282 N.E.2d 131; *People v. Latimer* (1966), 35 Ill. 2d 178, 220 N.E.2d 314; *People v. Marsh* (1949), 403 Ill. 81, 85 N.E.2d 715; *People v. DeRosa* (1941), 378 Ill. 557, 39 N.E.2d 1.

Section 9—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 9—2) defines voluntary manslaughter as follows:

"(a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) The individual killed, or

(2) Another whom the offender endeavors to kill, but he

> negligently or accidentally causes the death of the individual killed.
>
> Serious provocation is conduct sufficient to excite an intense passion in a reasonable person."

The Committee Comments to section 9—2 indicate only four categories of activities which can be considered serious provocation—substantial physical injury or assault, mutual quarrel or combat, illegal arrest and adultery with the offender's spouse.

■■ Defendant here contends that there was serious provocation by a mutual quarrel with the decedent. This argument overlooks the fact that the law does not permit one who initiates a combat to rely on the dispute to mitigate his offense from murder to manslaughter. The defendant further contends that in determining a slayer's mental state, that is, whether or not defendant was acting under a "sudden and intense passion," reference is not limited solely to what takes place at the time of the killing. The defendant claims that he was upset and hurt by his divorce and knowledge of his ex-wife's extra-marital relationship prior to their divorce, and his knowledge that she was giving money to her boyfriend that belonged to defendant's baby. Shortly prior to the quarrel which led to the death of Betty Causey, the defendant, while hiding in a closet, overheard his ex-wife, while speaking on the telephone to her boyfriend, say that he (the defendant) was "dumb and stupid." Defendant stated that when he heard this he felt bad and started crying, and that he began to feel worse when he heard the decedent "cussing" at their baby. He then came out from the closet, unplugged the telephone, and engaged in an argument with decedent over the fact that she was neglecting their baby by not making a necessary diaper change. When decedent pushed the defendant, he took the axe handle, with a hand on each end, put it over her head and pulled her towards him. Defendant put the axe handle down, and they then sat and talked in the living room for about 15 minutes before they engaged in the physical quarrel which ultimately resulted in the death of defendant's ex-wife.

■■■ As this court said in *People v. Matthews* (3d Dist. 1974), 21 Ill. App. 3d 249, 253, 314 N.E.2d 15, 18:

> "Passion on the part of the slayer, no matter how violent will not relieve him from liability for murder unless it is engendered by a provocation which the law recognizes as being reasonable and adequate. If the provocation is not sufficient the crime is murder. It is the general rule that language, however aggravated, abusive, opprobrious, or indecent, is not sufficient provocation to reduce a killing committed with a deadly weapon from murder to manslaughter. (*People v. Marrow*, 403 Ill. 69; *People v. McMurry*, 64 Ill. App. 2d 248.) The rule does not apply where as a result of

insulting or opprobrious words, the parties become suddenly heated, and engage in a mutual combat, *fighting on equal terms,* and death results from the combat. 40 Am. Jur. 2d *Homicide* sec. 64.

The term mutual combat has been defined as one into which both parties enter willingly, or in which two persons, upon a sudden quarrel, and in hot blood, mutually fight upon equal terms. 15 C.J.S. p. 358.

A slight provocation will not be adequate since the provocation must be proportionate to the manner in which the accused retaliated and therefore if accused on a slight provocation attacked deceased with violence out of all proportion to the provocation and killed him the crime is murder. This is especially true if the homicide was committed with a deadly weapon. See 40 C.J.S. *Homicide,* sec. 46, p. 908; Wharton's Criminal Law and Procedure (1957), sec. 276."

■■ The defendant relies on *People v. Newberry* (1st Dist. 1970), 127 Ill. App. 2d 322, 262 N.E.2d 282. In *Newberry* the defendant testified that he became so aroused and impassioned by the deceased's rude and obscene reply in response to his threat to kill himself if she would not agree to a reconciliation, that he immediately drew a gun from his pocket and shot her. In that case the defendant was convicted of voluntary manslaughter and on appeal sought reversal, arguing that the circumstances required a finding that the offense was murder rather than manslaughter. *Newberry* is inapposite on its facts. Moreover, the 15 minute interval, according to defendant's own statement, between the initial quarrel with decedent and then defendant's striking her with the vase, in our view, would be a period of sufficient length to negate the possibility that the defendant was acting under a "sudden and intense passion" within the meaning of the statute. See *People v. McMurry* (2d Dist. 1965), 64 Ill. App. 2d 248, 212 N.E.2d 7.

■■ We think the total circumstances of the instant case demonstrated malice and deliberation, and the evidence in the record could not support a conviction of either voluntary manslaughter or involuntary manslaughter. The defendant's actions in going to his ex-wife's apartment where he no longer lived and opening the door with a key he had retained since before the divorce; secreting himself in a closet to wait for his ex-wife's return; procuring an axe handle as an available weapon; his earlier anger and frustration at her conduct; remaining hidden while eavesdropping on her telephone conversation; raping her while she lay unconscious and then leaving her to die—all these facts render untenable any claim that the fatal wounding of the decedent was the consequence of a sudden and intense passion. (*People v. Brown* (1946), 392 Ill. 519, 64 N.E.2d 739; *People v. Arnold* (3d Dist. 1974), 17 Ill. App. 3d 1043, 309 N.E.2d 89.) In refusing

to give the tendered voluntary manslaughter instruction, the trial court determined that the record was lacking in evidence from which the jury could have found the defendant guilty of voluntary manslaughter. We concur in that determination.

We next consider defendant's contention that the trial court erred in refusing his instruction on involuntary manslaughter. A person commits involuntary manslaughter when he "kills an individual without lawful justification * * * if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly * * *." (Ill. Rev. Stat. 1975, ch. 38, par. 9—3(a).) Recklessness is defined by section 4—6 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 4—6):

> "A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

The issue presented, therefore, is whether the record contains any evidence of acts by the defendant which, if believed by the jury, could reasonably be concluded to be reckless conduct within the above definition, and which caused the death of Betty Causey.

The State contends that defendant's striking the decedent in the head with a vase filled with pennies caused her death. Dr. Immesoete, the coroner's physician, testified that the deceased suffered an injury to her jaw which probably caused her death and that this injury could have been caused by a blunt instrument such as a vase. Upon cross-examination by defense counsel, Dr. Immesoete testified that of the two bloodclots on the head, "the one on the jaw region was the most likely cause of death." The defendant contends that the act of pinning his ex-wife's neck against the door in order to restrain her and causing her to lose consciousness, fall and strike her head, was performed recklessly. This argument, of course, ignores the fact that defendant intentionally hit the deceased with the vase before she fell.

Recklessness is an indispensable element of involuntary manslaughter and in the case before us there is even less evidence of recklessness than of serious provocation. All of defendant's acts indicate an intentional action, and certainly the victim would not have died but for the blows defendant inflicted. Nothing in the record supports the conclusion that defendant's acts were merely reckless, and no evidence was introduced to show that death resulted from any other cause. On the contrary, defendant's own statement forcefully indicates that he intended to strike the blow which caused Betty Causey's death. The trial court did not err in refusing defendant's tendered instructions.

Defendant also claims that he was not proven guilty of murder beyond a reasonable doubt. As our previous discussion indicates, we are satisfied that the evidence was sufficient to support the conviction.

Defendant's final contention concerning the court's discretion in sentencing defendant to concurrent 50 to 75 year terms for murder and rape merits some brief comment.

● 8 We note the sentence imposed was within the statutory limitations. The defendant argues that the court unduly emphasized several aggravating factors while ignoring certain mitigating factors. The principle of law that we choose to follow is that the sentence will not be changed unless it is greatly at variance with the purpose and spirit of the law. (*People v. Sprinkle* (1974), 56 Ill. 2d 257, 307 N.E.2d 161, *cert. denied* (1974), 417 U.S. 935, 41 L. Ed. 2d 239, 94 S. Ct. 2650.) On review, the standard is not what the reviewing court, sitting as a trier of fact would have done, but whether the record shows an abuse of discretion mandating a reduction of sentence. (*People v. Pardue* (3d Dist. 1977), 46 Ill. App. 3d 845, 361 N.E.2d 383.) We believe the record indicates the trial court considered all of the factors necessary in sentencing and then made a sound determination of the punishment to be imposed, and we will not disturb it. The judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

BARRY, P. J., and STOUDER, J., concur.