**UNITED STATES of America ex rel. Major PEERY, Petitioner-Appellant,**

v.

**Allyn R. SIELAFF, Director, Department of Corrections, State of Illinois, and David Brierton, Warden, Stateville Correctional Center, Respondents-Appellees.**

No. 78–1167.

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 25, 1979 *

Decided Nov. 2, 1979.**

---

* This appeal is considered on the briefs and record, pursuant to petitioner's motion to waive oral argument, and this Court's order of July 12, 1978.

** This appeal was originally decided by unreported order on November 2, 1979. *See* Circuit Rule 35. The court has subsequently decided to issue the decision as an opinion.

Michael Mulder, Asst. State Appellate Defender, Mary Robinson, Deputy State Appellate Defender, Elgin, Ill., for petitioner-appellant.

Michael B. Weinstein, Chicago, Ill., for respondents-appellees.

Before CUMMINGS, TONE and BAUER, Circuit Judges.

PER CURIAM.

On the evening of March 31, 1971, Major Peery killed his wife in the kitchen of his daughter's home. He was tried and convicted of murder in July of that year, but the judgment was reversed on appeal due to the trial court's erroneous rejection of Peery's proposed instructions on voluntary manslaughter. 11 Ill.App.3d 730, 297 N.E.2d 643 (1st Dist. 1973). At his retrial, Peery again proffered instructions on voluntary manslaughter. The trial court tendered the instruction on voluntary manslaughter based on unreasonable belief in justification (self-defense) but refused the instruction on voluntary manslaughter based on sudden and intense passion resulting from serious provocation.[1] Peery was again convicted of murder and this time the judgment was affirmed on appeal. 41 Ill. App.3d 533, 354 N.E.2d 536 (1st Dist. 1976). He appeals from dismissal of his petition for Habeas Corpus, 28 U.S.C. § 2254. The sole issue on appeal is whether the trial court's refusal to instruct on voluntary manslaughter based on sudden and intense passion resulting from serious provocation violated petitioner's Sixth Amendment right to trial by a jury, or his Fifth and Fourteenth Amendment right to due process.

The general principle is well established that a criminal defendant is entitled to have a jury instruction on any defense which provides a legal defense to the charge against him and which has "some foundation in the evidence, 'even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility.'" *See United States v. Creamer*, 555 F.2d 612, 616 (7th Cir. 1977) (rehearing denied), quoting *United States v. Hillsman*, 522 F.2d 454, 459 (7th Cir. 1975) and *United States v. Lehman*, 468 F.2d 93, 108 (7th Cir. 1975). *Cf. United States v. Garner*, 529 F.2d 962 (6th Cir. 1976) (rehearing denied). The district court rejected petitioner's Sixth Amendment argument, in part because "we have found no cases which even intimate such an expansion of Sixth Amendment protection, and we are unwilling to break new constitutional ground in the absence of even analogous authority." The Fifth Circuit has said, however, that:

If the trial judge evaluates or screens the evidence supporting a proposed defense,

---

1. 38 Ill.Rev.Stat. § 9–2 defines two types of voluntary manslaughter:

(a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) The individual killed, or

(2) Another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.

(b) A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code [Justifiable Use of Force], but his belief is unreasonable.

and upon such evaluation declines to charge on that defense, he dilutes the defendant's jury trial by removing the issue from the jury's consideration. In effect, the trial judge directs a verdict on that issue against the defendant.

*Strauss v. United States*, 376 F.2d 416 (5th Cir. 1967). Since the result is trial by the judge, rather than trial by a jury, both Sixth Amendment and Due Process rights may be at issue. *Zemina v. Solem*, 573 F.2d 1027 (8th Cir. 1978), affirming and adopting *Zemina v. Solem*, 438 F.Supp. 455 (S.D.1977) (Nichol, C. J.).

■ In general, however, the "[f]ailure of the state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976). *Cf. DeBerry v. Wolff*, 513 F.2d 1336, 1339 (8th Cir. 1975); *Bonner v. Henderson*, 517 F.2d 135 (5th Cir. 1975); *Grech v. Wainwright*, 492 F.2d 747 (5th Cir. 1974). *See also United States ex rel. Waters v. Bensinger*, 507 F.2d 103, 105 (7th Cir. 1974) ("instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues.").

■ In a habeas action the question is whether the petitioner alleges a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962). The question before us is whether the "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Where it is the omission of an instruction that is at issue, the petitioner's burden is "especially heavy" because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1977).

■ In this case, the evidence of serious provocation was not so unequivocally strong that failure to give the instruction could be said to have amounted to a fundamental miscarriage of justice.[2]

The defendant testified at his second trial that he had been separated from his wife for about six weeks when he went to see her at his daughter's house to talk with her about having another daughter, Margaret, live with him. He told his wife he had called the Jehovah's Witnesses to report that she and the children should not be living with her son, Henry, because Henry was housekeeping with a woman to whom he wasn't married. He then said he would divorce her, since she had left him. Then,

> She walked up and I said, "Well, go on." She kind of went in a rage. I said, "Well, I'm going. I don't feel too good anyway."

. . . . .

<hr>

2. We recognize that in reversing Peery's first conviction, the Illinois appeals court said that:

> Even though the evidence was conflicting, the defendant's trial testimony, if believed by the jury, was sufficient to create an issue of fact as to whether he acted under a sudden and intense passion resulting from a serious provocation as defined in the statute. Ill. Rev.Stat. 1969, ch. 38, par. 9–2(a). *People v. Boothe*, (1972) 7 Ill.App.3d 401, 287 N.E.2d 289.

*People v. Peery*, 11 Ill.App.3d 730, 297 N.E.2d 643 (1973).

Nonetheless on Peery's second appeal the state court concluded that there was no prejudice in giving only the unreasonable belief instruction. It reasoned that in rejecting the unreasonable belief in justification defense (self-defense), the jury had necessarily disbelieved the only evidentiary basis for a serious provocation instruction—Peery's testimony that he was threatened and struck by his wife. The District Court followed this analysis in rejecting his habeas petition.

Such reasoning is not entirely satisfactory, however, since the jury's rejection of the unreasonable belief defense might have been based not on rejection of Peery's testimony that she threatened and struck him, but on disbelief of his testimony that he believed his response was necessary to prevent imminent death or great bodily harm. A basis for a finding of provocation could thus have survived the jury's rejection of the unreasonable belief defense. As we indicate below, however, it is doubtful that the evidence was sufficient to support such a finding, or to require such an instruction.

Q. Then what happened after that?

A. Well, she walked up and she said, "Anyway, I made up my mind to kill you."

Q. Then what happened?

A. She reached over in the sink.

Q. Then what happened after that? Did you say anything to that?

A. I asked her what she was going in the sink for.

Q. Then what happened?

A. I grabbed after her hand, and when I grabbed after her hand, my hand hit the sink and slid, and when I straightened up, I got hit in the head. (R. 479–480).

He testified that when she went to the sink he thought she intended to harm him, because she had threatened him, and he was afraid she might kill him. (R. 482). He did not, however, know what was in the sink. (R. 511). He testified that it was his wife who struck him, although other witnesses testified that they struck him with a chair and a spoon after he initiated his attack. He also testified that she had previously threatened to kill him, and twice before, in the 1950's, had struck him with a knife. Other witnesses testified that he accused her of seeing other men.

Under Illinois law,

The only types of provocation recognized as serious enough to reduce the crime of murder to voluntary manslaughter are: ". . . 'substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse, but not mere words, or gestures, or trespass to property' ". (*People v. Crews*, (1967) 38 Ill.2d 331, 335, 231 N.E.2d 451, 453.)

*People v. Free*, 37 Ill.App.3d 1050, 1052, 347 N.E.2d 505 (1976). *See*, S.H.A. Chap. 38, par. 9–2, Committee Comments.

 If instruction on provocation was warranted here, it would have to have been based on mutual quarrel or combat. Generally, however, mere quarrel without combat is insufficient. Thus, in *Crews, supra*, which involved a child abuse murder, the court said, "[i]t is ludicrous, however, to suggest that a reasonable person could have

been provoked by the actions of a 2 year old child." In *People v. Matthews*, 21 Ill. App.3d 249, 314 N.E.2d 15 (1974), the defendant testified that he got in an argument with a tow truck operator who "hollered and waved his hand in [defendant's] face. Matthews feared that [the tow truck driver] would attack him and he lost control and shot and killed [him]." The court said that this falls far short of meeting the objective test of reasonable provocation:

It is the general rule that language, however aggravated, abusive, opprobrious, or indecent, is not sufficient provocation to reduce a killing committed with a deadly weapon from murder to manslaughter.

\* \* \* \* \* \*

The term mutual combat has been defined as one into which both parties enter willingly, or in which two persons, upon a sudden quarrel, and in hot blood, mutually fight upon equal terms. 15 C.J.S. Combat p. 358. A slight provocation will not be adequate since the provocation must be proportionate to the manner in which the accused retaliated and therefore if accused on a slight provocation attacked deceased with violence out of all proportion to the provocation and killed him the crime is murder. This is especially true if the homicide was committed with a deadly weapon.

*People v. Matthews*, 21 Ill.App.3d at 253, 314 N.E.2d at 18–19.

The requirement that the response be proportional is clear in *People v. Simpson*, 74 Ill.2d 497, 23 Ill.Dec. 579, 384 N.E.2d 373 (1978), where denial of a voluntary manslaughter instruction was upheld because, "[i]t is an extravagant suggestion that scratches by the wife could serve as provocation for a malice-free but ferocious attack by the defendant with a deadly instrument." There was no evidence of an exchange of blows, of beating, or a threatened attack. (R. 503). On the other hand, where the defendant testified that his wife attacked him with a knife while they were fighting, that was held sufficient to require instruction on voluntary manslaughter based on sudden and intense passion resulting from an intense passion even though she was stabbed 53 times. *People v.*

*Boothe*, 7 Ill.App.3d 401, 403, 287 N.E.2d 289 (1972). In *People v. Canada*, 26 Ill.2d 491, 187 N.E.2d 243 (1962), the murder conviction of a man who had been feuding with another man in his rooming house was reversed because voluntary manslaughter instructions had been refused despite evidence that the decedent might have been armed.

These cases all support the trial court's denial of an instruction on sudden and intense passion, since the primary provocation alleged by Peery is a merely verbal argument, plus the indefinite threat by Peery's wife that "Anyway, I made up my mind to kill you." Although Peery says that she then reached into the sink, and although there may have been knives in the sink, there is no evidence that she ever in fact armed herself with a weapon. At most, there is evidence that after Peery initiated the combat by grabbing her hand, she struck him on the head. His attack with a knife was, however, out of proportion to the blow on the head, and moreover,

> the law does not permit one who initiates a combat to rely on the dispute to mitigate his offense from murder to manslaughter.

*People v. Causey*, 66 Ill.App.3d 12, 22 Ill. Dec. 758, 383 N.E.2d 234 (1978).

Some cases do suggest that the breakup of a marriage can give rise to a sudden and intense passion. *People v. Wesley*, 65 Ill. App.3d 25, 22 Ill.Dec. 38, 382 N.E.2d 358 (1978); *People v. Curwick*, 33 Ill.App.3d 757, 338 N.E.2d 468 (1975); *People v. Ahlberg*, 13 Ill.App.3d 1038, 301 N.E.2d 608 (1973); *People v. Newberry*, 127 Ill.App.2d 322, 262 N.E.2d 282 (1970). All of these cases are challenges to manslaughter convictions. They illustrate at most the deference of the reviewing courts to the factfinder's determinations. *People v. Echoles*, 36 Ill.App.3d 845, 851, 344 N.E.2d 620 (1976). They do not, however, alter the rule that mere words are not enough. In *Wesley*, moreover, the quarrel was accompanied by combat. In *Curwick*, the court held only that the defendant could not contest the

sufficiency of the evidence to support the voluntary manslaughter instruction which he had requested. In *Ahlberg*, the defendant argued that physical contact was necessary for there to be sufficient provocation, but the court held that

> It was the cumulative effect of his wife's absence, his fruitless searching for her whereabouts, her retention of counsel for the purpose of obtaining a divorce, and her slurring remarks as to his masculinity and the announcement that she had found another man.

which by the defendant's own testimony provoked him into a state of passion. In *Newberry*, similarly, the deceased woman had made an obscene response to the defendant's request for reconciliation.

Aside from *Newberry*, the only suggestion that words might amount to serious provocation is found in *People v. Clark*, 15 Ill.App.3d 756, 305 N.E.2d 218 (1973), where, in reversing a voluntary manslaughter conviction, the court held that there was no evidence of serious provocation because, although there had been an argument, there had been no threats or invective. This, of course, does not amount to a determination that threats or invective would be sufficient.[3] The threat in Peery's case, moreover, was not a threat of immediate action, and there was no invective.

■ More than a simple threat is necessary to establish provocation. For example in *People v. Hammock*, 68 Ill.App.3d 34, 24 Ill.Dec. 655, 385 N.E.2d 796 (1978), the deceased had threatened to kill his mistress, but in upholding her voluntary manslaughter conviction the court did not rely on that alone:

> In view of the evidence of prior severe beatings coupled with the current threat of death or great bodily harm which had followed hours of physical and mental abuse, and the prospect that deceased would immediately carry out his threats which so closely preceded the shooting, it is our opinion that the trial court was justified in submitting for the jury's consideration the question of whether the

---

**3.** The court also noted that the passion was not sudden, since after the initial provocation the

defendant walked downstairs to the decedent's apartment.

killing resulted from a sudden and intense passion . . . .

68 Ill.App.3d at 40, 24 Ill.Dec. at 660, 385 N.E.2d at 801.

In sum, defendant's argument about the breakup of his marriage, decedent's statement that she had made up her mind to kill him, her return to the sink, and the blow he received on the head do not even cumulatively amount to such evidence as would require instruction in Illinois on voluntary manslaughter based on serious provocation. The threat was indefinite, there is no evidence that she was about to act upon it, the argument was not particularly acrimonious, or prolonged, the defendant initiated such combat as there was, and his response to the blow on his head was disproportionate.[4] Failure to give the requested instruction can in no sense, therefore, be said to have resulted in a complete miscarriage of justice.

Accordingly, the judgment of the district court dismissing his petition for habeas relief is affirmed.

4. In light of our finding that the evidence was insufficient to require instruction on serious provocation, Peery's further argument is without merit that failure to give the instruction improperly relieved the state of its burden of proving the absence of provocation.