**UNITED STATES of America ex rel. Fred REED, Petitioner-Appellee,**

v.

**Michael LANE and James Greer, Respondents-Appellants.**

No. 83–2972.

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1984.

Decided April 10, 1985.

Coffey, Circuit Judge, dissented with opinion.

Kenneth A. Fedinets, Asst. Atty. Gen., Chicago, Ill., for respondents-appellants.

Scott Graham, Chicago, Ill., for plaintiff-appellant.

Before CUMMINGS, Chief Judge, COFFEY, Circuit Judge, and CAMPBELL, Senior District Judge.*

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

WILLIAM J. CAMPBELL, Senior District Judge.

The State of Illinois appeals the District Court's grant of a Writ of Habeas Corpus to Fred Reed, 571 F.Supp. 530. The petitioner had been serving two concurrent prison terms of fifty to one hundred years for two murders with an additional concurrent term of twenty to thirty years for armed robbery. The constitutional violation found by the District Court involved the state trial judge's failure to give a jury instruction on the compulsion defense. The trial judge declined to give the instruction based upon his interpretation of Illinois statutory law which provided that compulsion is not a defense in a capital case. This ruling was affirmed by the Appellate Court of Illinois, *People v. Reed*, 104 Ill.App.3d 331, 60 Ill.Dec. 80, 432 N.E.2d 979 (1982). The District Court, however, held that under that interpretation, the Illinois statute failed to put the petitioner on notice as to the requirements of the criminal law and therefore violated his due process rights. Based on that analysis, the District Judge granted the writ requiring Reed's discharge unless he was properly retried within 120 days. The state appeals that decision raising numerous arguments.

At the state court trial the bulk of the testimony regarding the actual incident came from statements of Reed. Those statements presented the following scenario. Michael Robbins, one of the murder victims, became involved in a heroin trafficking territorial dispute with another drug pusher named "Big 50". Since an amicable resolution was impossible, Big 50 determined that Robbins would be killed.[1] Reed, who lived in the same apartment building as Robbins, had lent him a 32 automatic gun for protection.[2] On August 28, 1977, Lonnie Hall entered Reed's apartment with a gun and told him he wanted to use Reed to get into Robbins' apartment.

Hall apparently believed Robbins would open the door for Reed since he trusted him. He told Reed if he didn't cooperate he "would come up dead." They went to Robbins' apartment, Reed knocked and identified himself, and Robbins opened the door. Hall then forced his way into the apartment and ordered Reed to tie up Robbins. Then Hall put a pillow over Robbins' head and shot him twice.

Hall and Reed then left Robbins' apartment. As they did so, Robbins' girl friend, Beverly Truitt, opened her door and asked what happened. Hall told Reed to stay in the hall and then he pushed Truitt back into her apartment. He then shot her twice and returned with a handful of jewelry. At Reed's request, Hall gave him some of the jewelry but told him if he revealed what had happened he would kill him.

Thereafter, Reed was indicted for two counts of murder and one count of armed robbery. At trial his defense was that he was coerced into participating in the crimes. However, after all the evidence was presented, the trial judge refused to instruct the jury on the coercion defense, concluding that under the applicable Illinois statutes coercion was not a defense in this case. Thereafter, the jury found Reed guilty of all three counts.

The Appellate Court of Illinois upheld the trial court's decision and presented the reasoning for it. The compulsion defense is codified in Ill.Rev.Stat. ch. 38, § 7–11(a):

> A person is not guilty of an offense, other than an offense punishable with death, by reason of conduct which he performs under the compulsion of threat or menace of the imminent infliction of death or great bodily harm, if he reasonably believes death or great bodily harm will be inflicted upon him if he does not perform such conduct.

The court determined that Reed had committed a capital offense because he had

---

**1.** This was corroborated by the testimony of Bobbie Taboda, the manager of the apartment building in which Robbins and Reed lived. Big 50 told her that she wouldn't have to worry

about Robbins any more because he would be "taken care of."

**2.** This was corroborated by Denise Johns, the sister of the other murder victim, Beverly Truitt.

been involved in two murders. This conclusion was premised on Section 9–1(b)(3) of Illinois' death penalty statute:

A defendant who at the time of the commission of the offense has attained the age of 18 or more and who has been found guilty of murder may be sentenced to death if: ...

3. the defendant has been convicted of murdering two or more individuals under Subsection (a) of this Section or under any law of the United States or of any state which is substantially similar to Subsection (a) of this Section regardless of whether the deaths occurred as the result of the same act or of several related or unrelated acts so long as the deaths were the result of either an intent to kill more than one person or of separate premeditated acts ...

The court relied heavily on *People v. Gleckler*, 82 Ill.2d 145, 44 Ill.Dec. 483, 411 N.E.2d 849 (1980). In that case the defendant had shot two teenagers in the back of the head with a shotgun while they kneeled on the side of the road. He presented a coercion defense at the trial but the judge refused to instruct the jury as to that defense. This ruling was upheld by the Illinois Supreme Court. In its opinion the court analyzed the legislative intent behind the compulsion defense and the capital crime statutes and concluded that the compulsion defense was not available to any murder charge. In response to defendant's argument that the statutes did not put him on notice that compulsion was not a defense, the court admitted that it was departing from the precise terms of the statute but justified its action stating:

The enlargement of the literal meaning of a criminal statute by a State Court of last resort is permissible, at least where such an enlargement conforms with legislative intent. 44 Ill.Dec. at 490, 411 N.E.2d at 856.

However, realizing the due process ramifications of its decision, the Supreme Court determined that it could only implement its decision prospectively. Nonetheless, since defendant's double murder presented an aggravating factor under the death penalty statute, the court determined that Gleckler had adequate notice that compulsion was not a defense to his crimes. The court stated, however:

A distinguishable situation would be presented here on due process grounds if no aggravating factor under section 9–1(b) were alleged, *Ibid.*

Following *Gleckler*, the Appellate Court in *People v. Reed* noted that since the defendant was being charged with two murders, an aggravating factor as defined in § 9–1(b)(3) was present. Therefore, it concluded that each murder was a capital crime and the coercion defense was unavailable as to each of them.

In ruling on the habeas corpus petition, the District Judge initially noted the necessary legal fiction that a person faced with a decision regarding potentially criminal conduct is aware of the provisions of criminal law. Thereafter, the District Judge stated:

In terms of that necessary fiction, had Reed looked at the statute when forced to decide what action to take in conjunction with Robbins' murder, he would have known from the plain statutory language the compulsion defense was available to him. Under that defense Reed could yield to Hall's death threat without putting his own life in jeopardy (via a potential death sentence) by so yielding. That was the legal matrix in which Reed was entitled to make his decision about which action to take. What was surely not obvious from the face of the statute and then-existing case law was that a *later* event—Hall's gratuitous murder of Truitt—would deprive Reed of the compulsion defense on the theory that *as a whole* two or more murders are punishable by death. [Footnotes deleted.]

Based on this reasoning, the District Judge concluded that Reed's due process rights were violated and that the issuance of the writ was required. Thereafter, the state moved for clarification to determine whether the court intended to set aside all three of Reed's convictions. The District Judge denied the motion and indicated that he

intended the petitioner to be discharged unless he was granted a retrial as to all three counts. This appeal was them filed.

■■■ Appellant claims that there was insufficient evidence of compulsion presented by the defendant to justify the giving of the jury instruction. This was not the rationale of the trial court nor was it suggested by the Illinois Appellate Court as an alternative basis for its decision. Furthermore, the District Judge was not persuaded by this argument. Under Illinois law compulsion is an affirmative defense but the defendant need only produce "some evidence thereon" and then the burden shifts to the state to disprove the defense beyond a reasonable doubt, *see Gleckler, supra,* 44 Ill.Dec. at 487, 411 N.E.2d at 853. Reed's testimony as to Hall's death threat is certainly evidence of compulsion and Hall's brandishing of a pistol constitutes a reasonable basis for fear of death or great bodily harm. This is further supported by Reed's awareness that Big 50 had ordered Robbins' death. The fact that Reed had lent Robbins a gun for protection also suggests that he had not intended to participate in the killing but in fact was opposed to the idea. Therefore, we conclude that under Illinois law Robbins produced sufficient evidence of compulsion to warrant a jury instruction.

The appellant's constitutional arguments are both based on a misconception of the District Judge's decision. It argues that the interpretation of state statutes is purely within the domain of state courts unless a violation of fundamental constitutional rights is involved. Furthermore, it claims;

The district court improperly granted petitioner habeas corpus relief by rejecting the construction placed on section 7–11(a) by the Illinois courts. Appellant's brief p. 15.

■■■ The requirement that criminal statutes must give fair warning of the conduct proscribed implicates "the first essential of due process," *see Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926), and is a fundamental right, *see Marks v. United*

*States,* 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977). More importantly, the District Judge did not invalidate or set aside the state court's interpretation of the statute. He simply ruled that it could not be applied retroactively to this defendant's conduct. This is the proper remedy and has been previously utilized in *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). In that case a South Carolina criminal statute prohibited "entry on lands of another after notice prohibiting same." The petitioners were convicted under that statute even though they had no notice prior to entering the property that their presence was prohibited. The Supreme Court of South Carolina upheld the convictions construing the statute to include situations where a person remained on the premises after receiving notice to leave. The United States Supreme Court, however, determined that the convictions were invalid because they violated the due process clause of the Constitution. The court relied on the *Connally* line of cases although noting that the case before it was somewhat distinguishable:

It is true that in the Connally and Lanzetta cases, and in other typical applications of the principle, the uncertainty as to the statute's prohibition resulted from vague or overbroad language in the statute itself, and the Court concluded that the statute was "void for vagueness." The instant case seems distinguishable, since on its face the language of § 16–386 of the South Carolina Code was admirably narrow and precise; ... The thrust of the distinction, however, is to produce a potentially greater deprivation of the right to fair notice in this sort of case, where the claim is that a statute precise on its face has been unforeseeably and retroactively expanded by judicial construction, than in the typical "void for vagueness" situation. 378 U.S. at 351–352, 84 S.Ct. at 1701–1702.

The remedy applied was to set aside the convictions but the court specifically noted that the South Carolina Supreme Court's construction of the statute would be valid

prospectively, 378 U.S. at 362, 84 S.Ct. at 1707. That is the remedy applied by the District Judge in this case, although here a retrial was feasible since the situation involved the omission of a defense rather than the creation of an offense.

Appellants also argue that the state court's omission of a compulsion instruction does not rise to a constitutional violation because it did not result in a fundamental miscarriage of justice, *citing, inter alia, United States ex rel. Peery v. Sielaff,* 615 F.2d 402 (7th Cir.1979). However, the *Peery* line of cases involve Sixth Amendment violations which occur when

> [T]he trial judge evaluates or screens the evidence supporting a proposed defense and upon such evaluation declines to charge on that defense, [as a result] he dilutes the defendant's jury trial by removing the issue from the jury's consideration, *Strauss v. United States,* 376 F.2d 416, 419 (5th Cir.1967), quoted in *Peery, supra,* 615 F.2d at 403–404.

The case *sub judice* does not arise under the Sixth Amendment but rather under the due process clause of the Fifth Amendment. Therefore, the standard of review utilized in the *Peery* line of cases is not applicable here. Rather, the relevant standard is whether the jury instructions accurately reflected the law as it appeared at the time of the alleged criminal conduct, *see Marks v. United States, supra; Rabe v. Washington,* 405 U.S. 313, 92 S.Ct. 993, 31 L.Ed.2d 258 (1972). Therefore, the District Court was correct in concluding that the appropriate time frame for determining the criminal law applicable to Reed's case was at the time of Hall's threat. This is a situation where "a federal right turns upon the status of state law as of a given moment in the past—or, more exactly, the appearance to the individual of the status of state law as of that moment." *Amsterdam,* Note 109, U.Pa.L.Rev. 67, 74, n. 34 quoted in *Bouie,* 378 U.S. at 354, 84 S.Ct. at 1703.

■ The District Court's holding has a very limited scope. Under *Gleckler,* decided in 1980, compulsion is no longer a defense to any murder charge in Illinois. That decision has not been challenged here and it remains valid for prospective application. However, under the Illinois Supreme Court's own reasoning, that principle cannot be applied to Reed's actions which occurred in 1977. At that time there had been no judicial pronouncement regarding the interplay between the compulsion defense statute and the death penalty statute. A reading of those statutes in 1977 would have revealed that compulsion was not a defense to a murder charge if "the defendant has been convicted of murdering two or more individuals." Such a reading would not have informed Reed that he could not legally yield to the death threat of Hall. Nor would a fair reading of those statutes indicate that the subsequent act of Hall murdering Truitt, an act described by the Appellate Court of Illinois as "spontaneous," could deprive him of the compulsion defense as to the first murder.

■ As to Truitt's murder, the Appellate Court of Illinois found Reed to be accountable under the following reasoning:

> Accountability for murder can be established by proof that before or during the commission of that offense, with the intent to promote or facilitate it, the defendant aided and abetted or attempted to aid and abet in the murder.
>
> \* \* \* \* \* \*
>
> That the defendant was accountable for the Robbins' murder is not disputed. We believe that there also was sufficient evidence to find the defendant accountable for Truitt's murder. While it appears that Truitt's murder was a spontaneous reaction by Hall to Truitt's appearance after Robbins' murder, this fact is not a defense when the evidence indicates involvement by the defendant in that spontaneous act. We believe the defendant aided and abetted in Truitt's murder because he was present at the scene of the crime, having remained outside her apartment, and did not oppose or disapprove of Hall's actions. [Citations omitted.] 60 Ill.Dec. at 85–86, 432 N.E.2d at 984–985.

However, Reed's statement indicated that Hall, who was then armed with two guns, told him to stay there. Thus, an issue of fact exists regarding whether his presence, which was the basis for his accountability, was the result of compulsion. If Reed were permitted to raise the compulsion defense as to the first murder and were to be successful, his involvement in the second murder could not be a capital crime. Therefore, he would be able to raise the compulsion defense as to it. Therefore, we find that the second murder charge must also be retried.

■ With respect to the armed robbery charge,[3] however, Reed's accountability is also premised on his voluntary involvement in the asportation element of the crime. Reed admitted this participation and it does not appear that the compulsion defense could be raised to it. Therefore, we conclude that a retrial of the armed robbery charge is not necessary.

Accordingly, we affirm the District Court's issuance of the writ but stay it pending Reed's serving of the sentence on the armed robbery charge and 120 days thereafter (for the State to retry him).

COFFEY, Circuit Judge, dissenting.

The issue as framed by the majority and the district court in this case is whether the petitioner, Fred Reed, had adequate notice that the compulsion defense would not be available to him at trial when he was allegedly forced to participate in the murder of Robbins. Despite the majority's well-written opinion to the contrary, I believe the petitioner had adequate notice that the compulsion defense would not be available to him at trial because of his participation in the second murder involving the witness Truitt. Thus, I respectfully dissent.

At the time the crimes in the present case were committed, August 1977, Illinois law provided that the compulsion defense was available unless the offense charged was punishable by death. Ill.Rev.Stat. ch. 38, § 7–11(a). According to the Illinois law at the time, a person could be punished by death if he was convicted of murdering two or more individuals. Ill.Rev.Stat. ch. 38, § 9–1(b)(3). The majority correctly notes that a person must have adequate notice of the law prohibiting certain conduct in order for that person to be charged with a criminal violation. *See Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). When Reed participated in the Robbins' murder, arguably he did not have notice that if charged with the murder he would be unable to raise the compulsion defense at trial. The record reveals, however, that Reed participated in a second murder, involving the witness Truitt. The Illinois Appellate Court found that Hall pushed Truitt into her apartment and told Reed to wait in the hallway. Reed did not attempt to flee or get help; rather, he waited for Hall, heard the shots, and when Hall reappeared asked him for a share of the jewelry taken from Truitt. The Illinois Appellate Court ruled that these facts were sufficient, in and of themselves, to support Reed's conviction for the first-degree murder of Truitt under the accountability theory. *People v. Reed*, 104 Ill.App.3d 331, 339, 60 Ill.Dec. 80, 86, 432 N.E.2d 979, 985 (1982).

For purposes of Ill.Rev.Stat. ch. 38, § 9–1(b)(3), I believe Reed had sufficient notice that his participation in the second murder would strip him of his compulsion defense for both murders. A literal reading of § 9–1(b)(3) reveals that this statute does not require contemporaneous acts; rather, the acts may be punishable by death if they "occurred as a result of the same act or of several related or unrelated acts...." Thus, although the compulsion defense may have been initially available for the murder of Robbins, in my opinion Reed's subsequent participation in the sec-

---

3. It is questionable whether an armed robbery was actually committed since this could be a case of either larceny or burglary. The murder of Truitt clearly occurred first and the taking of the jewelry, in which Reed participated, oc-curred thereafter. Therefore, the crime was either larceny or burglary. However, since the Appellate Court of Illinois has held it to be armed robbery, we are bound by its decision.

ond murder stripped him of any right he may have had to assert the compulsion defense at trial.

Clearly, Reed's guilt for the second murder was a real possibility under an accountability theory and the relevant Illinois statutes provided adequate notice to Reed that participation in the second murder would cause the compulsion defense to be forfeited in its entirety. Thus, I believe that when Reed made his choice to remain and support Hall during the Truitt murder, he forfeited his compulsion defense. Accordingly, I respectfully dissent.[1]

1. Even if one would disagree with the conclusion that there was adequate notice in this case, Reed's conviction should be reversed only as to the murder of Robbins. Reed only complains that he was denied his compulsion defense as to the murder of Robbins; he asserted no compulsion defense as to the murder of Truitt. The Illinois Appellate Court has made a sufficient finding that Reed's acts in the hallway during the murder of Truitt and his subsequent request for part of Truitt's jewelry constituted enough evidence to sustain the conviction for the second offense. I do not agree with the district court that had the compulsion defense been available for Robbins' murder, that this would have necessarily impacted upon Reed's conviction for the murder of Truitt. As noted by the Illinois Appellate Court, there were sufficient facts involving the murder of Truitt to separately sustain the conviction for the murder of Truitt under the accountability theory.