**Gary CAIBAIOSAI, Petitioner,**

v.

**Duane BARRINGTON, Superintendent, and the Attorney General of Wisconsin, Respondents.**

No. 85–C–726–C.

United States District Court, W.D. Wisconsin.

Sept. 15, 1986.

Steven P. Weiss, Asst. State Public Defender, Madison, Wis., for petitioner.

Thomas J. Balistreri, Asst. Atty. Gen., Madison, Wis., for respondents.

## ORDER

CRABB, Chief Judge.

This is a petition for a writ of habeas corpus in which petitioner contends that he is in custody in violation of the Constitution of the United States. 28 U.S.C. § 2254. Jurisdiction is present; petitioner was confined in this district at the time he made his application for the writ. 28 U.S.C. § 2241(d).

Petitioner challenges his conviction in the Circuit Court for Kenosha County, Wisconsin, of homicide by intoxicated operation of a motor vehicle, a violation of Wis.Stat. § 940.01(1)(a). He was charged with causing the death of Janet Tunkieicz, a passenger on his motorcycle on the evening of June 6, 1982. The facts of this case are described in full in the state supreme court's opinion affirming petitioner's conviction, *State v. Caibaiosai*, 122 Wis.2d 587, 590–591, 363 N.W.2d 574 (1985). In brief, the accident occurred when petitioner lost control of his motorcycle, which then went off the highway, hit a utility pole and flipped over. Tunkieicz was thrown off and killed instantly, but petitioner was not seriously injured. Petitioner's blood alcohol level was 0.13 percent, when tested two hours after the accident.

Wis.Stat. § 940.09(1) punishes as a class D felony any person who

(a) Causes the death of another by the operation or handling of a vehicle, firearm or airgun and while under the influence of an intoxicant;

The statute provides an affirmative defense "if it appears by a preponderance of the evidence that the death would have occurred even if the actor had not been under the influence of an intoxicant." Wis. Stat. § 940.09(2).

In his appeal to the Wisconsin supreme court, petitioner argued that § 940.09 is unconstitutional, either because 1) the statute shifts to the defendant the burden of negating an implicit element of the crime: the causal connection between the defendant's intoxicated operation and the death of a person; or 2) if the causal connection between intoxication and the death is not an element of the crime, the statute violates fundamental principles of fairness and due process by punishing without regard to whether the proscribed conduct caused the harm triggering the punishment. Also, petitioner argued that the trial court denied him a fair trial when it refused to instruct the jury on the affirmative defense set out in § 940.09(2). Petitioner had raised a third ground for relief, that the affirmative defense provision of § 940.09(2) violated his right against self-incrimination. This ground for relief was dismissed in an order entered in this case on August 26, 1985.[1]

Having exhausted his state court remedies, petitioner now seeks collateral relief in this court.

*Allocation of the burden of proof*

Petitioner argues that one of the elements of homicide by intoxicated operation of a vehicle is the causal connection between a defendant's intoxicated operation of a vehicle and the death of a person, and that the due process clause, as interpreted in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) requires the state to prove this element beyond a reasonable doubt.

In *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970), the Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Several years later, in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881,

---

1. In his petition, petitioner asserted also that § 940.09 was unconstitutional because it imposed felony punishment on a strict liability basis, without requiring *mens rea* or *scienter*. However, petitioner does not discuss this issue in his brief, and I assume that he has abandoned the issue.

44 L.Ed.2d 508 (1975), the Court applied the teachings of *Winship* to a Maine statute that provided that all intentional or criminally reckless killings were felonious homicides punishable by life imprisonment, unless the defendant proved by a preponderance of the evidence that the killing was in the heat of passion. 421 U.S. at 691–692, 95 S.Ct. at 1885–1886. The Court held the Maine statute unconstitutional on the ground that requiring the defendant to prove heat of passion impermissibly removed from the state the burden of proving all elements of the crime beyond a reasonable doubt.

In the wake of *Mullaney*, some courts and commentators expressed doubts about the constitutionality of some or all affirmative defenses. *See* Jeffries and Stephan, *Defenses, Presumptions and Burden of Proof in the Criminal Law*, 88 Yale L.J. 1325, 1340 & n. 40, 41 (1979). However, in *Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977), the Court rejected the argument that "a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses relating to the culpability of the accused."

In *Patterson*, defendant was charged under a New York statute that had two elements: (1) "intent to cause the death of another person"; and (2) "caus[ing] the death of such person or a third person." N.Y. Penal Law § 125.25 (McKinney 1975). The statute did not make malice aforethought an element of the crime, but it permitted a defendant to defend against the charge by showing by a preponderance of the evidence that he "acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse." *Id.* Although the New York statute seemed indistinguishable from the one struck down in *Mullaney*, the

Supreme Court found it constitutional, holding that the statute covered every element essential to the crime: death, intent, and causation. Requiring the defendant to carry the burden of proving extreme emotional disturbance was not unconstitutional because the affirmative defense of extreme emotional disturbance bore no direct relationship to any element of the statutory crime. *Id.* 432 U.S. at 201, 97 S.Ct. at 2322. New York's defense of "extreme emotional disturbance" is essentially an expanded version of the older heat of passion concept that historically has been an affirmative defense under the common law. *Id.* at 207, 97 S.Ct. at 2325. The Court emphasized that the "applicability of the reasonable doubt standard ... has always been dependent on how a State defines the offense that is charged in any given case...." 432 U.S. at 211 n. 12, 97 S.Ct. at 2327 n. 2.

██ The lesson to be drawn from *Patterson* is that when determining which facts must be proved beyond a reasonable doubt and which facts a defendant may be required to prove, the legislature's definition of the elements of the offense is usually dispositive. *See McMillan v. Pennsylvania*, —— U.S. ——, 106 S.Ct. 2411, 2416, 91 L.Ed.2d 67 (1986). Although the Court has suggested that the reasonable doubt requirement might apply to facts not formally identified as an element of the crime, and that there are "obviously constitutional limits beyond which the States may not go" in redefining crimes to shift the burden of proof, the Court has not attempted to define these constitutional limits other than to observe that a legislature may not declare an individual presumptively guilty. *See Patterson*, 432 U.S. at 210, 97 S.Ct. at 2327; *see also McMillan*, 106 S.Ct. 2417.[2]

---

**2.** After *Patterson* it is open to question whether *Mullaney* retains any vitality. The Court's discussion of *Mullaney* and *Patterson* in *McMillan v. Pennsylvania*, —— U.S. ——, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), suggests that the Court would limit the *Mullaney* holding to the particular statute under consideration in that case, and that *Patterson* established more generally applicable

principles. *See McMillan*, 106 S.Ct. at 2416. However, *Mullaney* continues to be cited for the general proposition that due process requires a state to prove every element of an offense. *See Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 1973, 85 L.Ed.2d 344 (1985); *Reed v. Ross*, 468 U.S. 1, 4, 104 S.Ct. 2901, 2904, 82 L.Ed.2d 1 (1984).

Commentators have criticized the Court's holding in *Patterson* that due process requires only that the state prove those elements defined by the text of the statute. *See, e.g.,* Note, The Constitutionality of Affirmative Defenses after *Patterson v. New York,* 78 Col.L.Rev. 655, 666 (1978). Nevertheless, it appears that an analysis based upon the express language of the statute is required by *Patterson.*

The Wisconsin supreme court interprets § 940.09 as not requiring a specific causal connection between the defendant's intoxicated driving and the victim's death an element of the crime of homicide by intoxicated operation of a motor vehicle. Both the majority and the dissent read the causation element of § 940.09 as requiring only that the state prove that the victim's death was caused by the operation of a vehicle while the operator is intoxicated. The majority describes the elements as follows:

> Section 940.09(1)(a), Stats., in its present form clearly states that a person commits a Class D felony who:
>
> (1) causes the death of another,
>
> (2) by the operation of a vehicle,
>
> (3) while under the influence of an intoxicant.

122 Wis.2d at 593, 363 N.W.2d 574. The dissent notes that:

> [T]he state need prove only the three statutory elements of the crime beyond a reasonable doubt—(1) the driver was operating a vehicle; (2) the driver was operating the vehicle while under the influence of an intoxicant; and (3) the operation of the vehicle, but not necessarily the driver's faulty operation of the vehicle or the driver's intoxicated condition, "caused" the death....

122 Wis.2d at 603, 363 N.W.2d 574 (Abrahamson, J., dissenting). Nevertheless, relying on several phrases in the majority opinion, petitioner argues that a causal connection between defendant's wrongful act (intoxicated driving) and the victim's death is a presumed element of the offense.

Although the majority opinion contains some ambiguous and confusing statements on the issue, a fair reading of it leaves no doubt that the majority concluded that a specific causal connection between the victim's death and the defendant's intoxication is not an element of homicide by intoxicated operation of a motor vehicle. *See State v. Caibaiosai,* 122 Wis.2d at 594, 595, 363 N.W.2d 574 ("The statute does not include as an element of the crime a direct causal connection between the fact of defendant's intoxication, conceptualized as an isolated act, and the victim's death ... The substantial factor in the cause of the death is the cause in fact of the operation of the vehicle while intoxicated"). The dissent read the statute in the same way. *See id.* at 602–603, 363 N.W.2d 574 ("Thus, sec. 940.-09(1)(a) provides that when a person operates a vehicle when intoxicated and a death results, the defendant is guilty of a felony, even if there is no causal connection between the intoxication and the death....")[3]

■ As noted above, the statute provides an affirmative defense if it appears that the death would have occurred even if the operator had not been intoxicated. Petitioner contends that the very existence of the affirmative defense proves that causation by intoxicated operation is an implicit element of the crime. According to petitioner, it is illogical to say that a causal connection between the intoxicated operation and the death is not an element, if the negation of that causal connection can be a

---

**3.** Indeed, the basis for Justice Abrahamson's dissent is her disagreement with the majority's approval of a statute that did not require the state to prove causation of the harm by the wrongful conduct (intoxication or fault operation of the vehicle while under the influence of an intoxicant). In her view, a criminal statute that permits conviction without proof of a causal connection between wrongful conduct and harm is so fundamentally unfair as to violate constitutional guarantees of substantive due process. As she points out, it is conceivable that under this statute the state could punish an intoxicated driver who was stopped at a stop sign and hit from the rear by another vehicle or who was hit while proceeding through an intersection by a car running a red light. *State v. Caibaiosai,* 122 Wis. at 603–04, 363 N.W.2d 574.

complete defense. Petitioner misapprehends the nature of an affirmative defense. Once a state incorporates into a criminal statute the essential elements of a crime, it is essentially free to create or withhold affirmative defenses to that crime. The fact that it creates an affirmative defense does not mean that the negation of that defense becomes an essential element of the crime. If this were so, states would be reluctant to create affirmative defenses. "[A] state [need not] prove beyond a reasonable doubt every fact, the existence or nonexistence of which is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment." *Patterson,* 432 U.S. at 207, 97 S.Ct. at 2325. "[T]o recognize at all a mitigating circumstance does not require the State to prove its nonexistence in each case in which the fact is put in issue, if in its judgment this would be too cumbersome, too expensive, and too inaccurate." *Id.* at 209, 97 S.Ct. at 2326 (footnote omitted).

■ The Wisconsin statute does not make a causal connection between the defendant's intoxication and the victim's death an element of the offense of homicide by intoxicated operation of a motor vehicle. Thus, under *Patterson,* requiring the defendant to prove the affirmative defense of lack of such causal connection does not violate the due process clause.

*The constitutionality of punishment without requiring proof of causal connection*

Petitioner argues next that if § 940.09 does not require that the driver's intoxication caused the victim's death, the statutory scheme violates fundamental fairness and due process because it punishes without regard to whether the proscribed conduct caused the harm. Respondent contends that § 940.09 *does* require proof of a causal connection between the wrongful conduct (operation of a vehicle while intoxicated) and the death, and that due process does not require the state to prove the causal relationship between each component of the wrongful conduct and the resulting harm.

A state's decision about the manner in which it will define a crime is not subject to proscription under the due process clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *McMillan,* 106 S.Ct. at 2416; *Patterson,* 432 U.S. at 202, 97 S.Ct. at 2322. It would be fundamentally unfair if § 940.09 dispensed with the requirement that the state prove a causal connection between the defendant's actions and the victim's death. The state could not impose liability based upon mere coincidence of time and place and defendant's behavior. Here, however, where the wrongful conduct consists of the combined acts of intoxication and driving, fundamental fairness does not compel the state to prove the causal relationship between the victim's death and each component of the defendant's act.

Petitioner cites several cases from other states in which courts have discussed the necessity that the state prove a causal connection between the driver's intoxication and the victim's death.[4] Petitioner notes correctly that in several of these cases, the courts concluded that the prosecution must prove such a causal relationship. However, contrary to petitioner's assertion that these "courts have held that due process demands that the state prove a causal relationship," in each of these cases the court reached its conclusion as a matter of statutory construction, and in only one case was a constitutional issue hinted at.[5]

---

4. *State v. Wong,* 125 N.H. 610, 486 A.2d 262 (1984); *Higginbotham v. State,* 427 N.E.2d 896 (Ind.1981); *State v. Taylor,* 463 So.2d 1274 (La. 1985); *State v. McGill,* 73 N.C.App. 206, 326 S.E.2d 345 (1985); *Hodgins v. State,* 706 P.2d 655 (Wyo.1985).

5. A Louisiana statute defines vehicular homicide as the killing of human being caused by a person's operation of an automobile when the operator is intoxicated. In *State v. Taylor,* 463 So.2d 1274 (La.1985), the trial court held the statute unconstitutional. The Louisiana supreme court held that, based on common law

Petitioner also suggests that the unfairness of § 940.09 is apparent when this statute is compared to those of other states, because only Florida and Wisconsin permit a conviction for homicide by intoxication without requiring proof of a causal connection between the intoxication and the death. The Supreme Court rejected a similar argument in *McMillan:*

> Petitioners seek support for their due process claim by observing that many legislatures have made possession of a weapon an element of various aggravated offenses. But the fact that the States have formulated different statutory schemes to punish armed felons is merely a reflection of our federal system, which demands "[t]olerance for a spectrum of state procedures dealing with a common problem of law enforcement." That Pennsylvania's particular approach has been adopted in few other States does not render Pennsylvania's choice unconstitutional.

106 S.Ct. at 2419 (footnotes and citation omitted).

Petitioner's argument that it is unconstitutional to punish without proof of a causal connection between intoxication and the victim's death raises the same fundamental question posed by his affirmative defense argument, whether proof beyond a reasonable doubt of the statutory elements of § 940.09 provides a constitutionally adequate basis for imposing felony liability. If it is not fundamentally unfair to punish a defendant without proof that his intoxication caused the death, then it is constitu-

tionally permissible to require him to prove that the intoxication did not cause the death. *See* Jeffries and Stephan, 88 Yale L.J. at 1365.

The issue raised by petitioner's challenge to § 940.09 is not whether the legislature made a wise choice in defining the offense, but whether the statute offends a fundamental principle of justice. Answering this question is a difficult task; indeed, determining the proper analytic framework is difficult, because "the existence of constitutional constraints on the substantive criminal law is largely *terra incognita.*" *Id.* at 1366.[6] It is significant that plaintiff can point to no case in which a court has invalidated a felony-murder conviction on constitutional grounds, although most felony-murder statutes require no proof of specific culpability with respect to the murder. Generally, the state is required to prove only the culpability specified for the underlying crime. Despite scholarly criticism of such statutes that impose an additional penalty for the death of another without any independent proof of blameworthiness for the death, *see, e.g.,* LaFave & Scott, *Criminal Law,* p. 264 (1972); Packer, *Mens Rea and the Supreme Court,* 1962 Sup.Ct.Rev. 107, the courts have not held them invalid.

In this case, I am convinced that it is not fundamentally unfair to impose felony liability based upon proof that the defendant's operation of a motor vehicle caused the death of another and that the defendant operated the vehicle while under the

---

principles and the rules of statutory construction, the statute required proof of a causal relationship between the intoxication and the death, and that so construed the statute "does not contain the unconstitutional features upon which the district court based its decision." 463 So.2d at 1276. The court did not explain why the statute would be unconstitutional if it did not require proof of this causal connection, or why the trial court found the statute unconstitutional.

**6.** Jeffries and Stephan suggest however that certain features may be identified, even if most of the landscape is uncharted. They postulate three "constitutional minima for criminal punishment": an action (the proscribed conduct);

culpability a mental attitude indicative of blameworthiness; and a proportionate relationship between the authorized penalty and the wrong done. Jeffries and Stephan, *Defenses, Presumptions and Burden of Proof in the Criminal Law,* 88 Yale L.J. 1325, 1370–71 (1979). Analyzed within this conceptual framework, § 940.09 readily passes muster. Conviction requires proof of an act (causing death by operation of a motor vehicle while intoxicated) which in itself evidences a mental attitude indicative of blameworthiness (choosing to drive in an intoxicated state), and the authorized penalty of a five year felony sentence is not grossly disproportionate to the proscribed conduct.

influence of an intoxicant. Accordingly, I conclude that § 940.09 does not violate the substantive protections of the due process clause.

*Failure to give an affirmative defense instruction*

The final issue raised by petitioner concerns the trial court's refusal to instruct the jury on the affirmative defense set forth in § 940.09(2). Petitioner argues that the denial of the affirmative defense instruction effectively directed a guilty verdict, and therefore denied petitioner a fair trial and due process of law.

Petitioner raises a preliminary question concerning the standard a federal court should apply to a state court's denial of a requested affirmative defense instruction. In *United States ex rel. Peery v. Sielaff,* 615 F.2d 402, 404 (7th Cir.1979), the Court of Appeals for the Seventh Circuit held that a state court's failure to instruct on a lesser included offense does not warrant setting aside a conviction unless the "failure to give the instruction could be said to have amounted to a fundamental miscarriage of justice." *See also Williford v. Young,* 779 F.2d 405, 406 (7th Cir.1985); *Nichols v. Gagnon,* 710 F.2d 1267, 1268 (7th Cir.1983). Petitioner argues that the "fundamental miscarriage of justice" standard does not apply to the failure to give a requested instruction on a complete affirmative defense. Petitioner relies on *Strauss v. United States,* 376 F.2d 416, 419 (5th Cir.1967) and *Zemina v. Solem,* 573 F.2d 1027 (8th Cir.1978), both of which are cited in *Peery,* for the proposition that a more liberal standard should be applied in collateral review of denial of an affirmative defense instruction. Petitioner suggests that the *Peery* court distinguished *Strauss* and

*Zemina* when it adopted the "fundamental miscarriage of justice" standard in cases involving lesser-included-offense instructions.

It seems clear that under the law of this circuit the same standard of review should be applied to the failure to give an affirmative defense instruction as to the failure to give an lesser-included-offense instruction. In *United States ex rel. Reed v. Lane,* 759 F.2d 618 (7th Cir.1985), the court of appeals implied that the failure to give a lesser-included-offense instuctions (as in *Peery*) and the failure to give an affirmative defense instruction (as in *Strauss*) implicate the same constitutional concern, and that the "fundamental miscarriage of justice" standard applies to both situations. The court stated

> Appellants also argue that the state court's omission of a compulsion instruction does not rise to a constitutional violation because it did not result in a fundamental miscarriage of justice, *citing, inter alia, United States ex rel. Peery v. Sielaff,* 615 F.2d 402 (7th Cir.1979). However, the *Peery* line of cases involve Sixth Amendment violations which occur when
>
> > "[T]he trial judge evaluates or screens the evidence supporting a proposed defense and upon such evaluation declines to charge on that defense, [as a result] he dilutes the defendant's jury trial by removing the jury's consideration, *Strauss v. United States,* 376 F.2d 416, 419 (5th Cir.1967), quoted in *Peery, supra,* 615 F.2d at 403–404."

759 F.2d at 623.[7] Thus, petitioner is incorrect in his assertion that the *Peery* court distinguished the lesser included offense situation from the affirmative defense situation of the *Strauss* case.

---

7. *Reed* involved the failure to give an affirmative defense instruction of coercion. However, in that case, the trial court refused to give the coercion instruction not because there was insufficient evidence, but because it concluded that under the applicable Illinois statutes coercion was not a defense. 759 F.2d at 620, 622. The court of appeals concluded that the Illinois decision holding that the coercion defense was unavailable could not be retroactively applied to petitioner, and held that a less strict standard of review ("whether the jury instructions accurately reflected the law as it appeared at the time of the alleged criminal conduct") than that used in *Peery* should be applied. *Id.* at 623. Unlike *Reed,* the present case involves failure to give an affirmative defense based on the trial court's conclusion that there was insufficient evidence to warrant the instruction.

I conclude that the trial court's refusal to give the affirmative defense instruction should be judged under the "fundamental miscarriage of justice" standard. The point is not important, however, because petitioner is not entitled to relief regardless which standard of review is applied in this case. The failure to give the affirmative defense instruction was not error, much less error of constitutional magnitude.

■ The trial judge refused to give the affirmative defense instruction because there was "no record upon which to base giving such an instruction to the jury." [Trial trans. 297]. Petitioner contends that there was evidence from which the jury could have concluded that the actions of the passenger or road conditions caused the accident, and not petitioner's intoxication. A defense witness, David Dickinson, testified that the actions of a motorcycle passenger or road defects can affect control of the motorcycle, as follows:

Q Does the—is there any way in which a passenger on a motorcycle can influence the control that the driver has over the motorcycle?

A Yes, definitely.

Q How? In what way?

A Any manner. Let's say, the way they sit; if they lean the wrong way; the way they hold on.

Q Specifically with respect to turns or taking curves in the road, how would the actions of the passenger affect the control of a motorcycle driver?

A It's been my experience that if the passenger on back—well, a motorcycle has to lean to go through a corner. Okay. If you can't lean, you aren't going to be able to take the corner. You are going to end up going straight. If a passenger leans the opposite way you are, you are not going to be able to lean as far as you want to.

Q Would that be true even though there was a marked difference in the weight of the driver and the passenger? The driver was, let's say, 80 to 90 pounds heavier than the passenger.

A If the passenger leaned enough.

Q What about things like faults in the road? Would that have an influence on control? Like, for instance, a difference—a change of surface from a hardtop to a gravel or things of this nature?

A Yes.

Trial trans. 238–239.

However, there was no evidence that passenger behavior or road conditions were a factor in the accident. On cross-examination, Dickinson was asked about both.

Q Did you observe the passenger, the female, who was on the rear seat of the cycle to do anything from the moment you observed that cycle to pass you to the moment that cycle returned to the lane of travel to disorientate the driver?

A I don't recall.

\* \* \* \* \* \*

Q Did you have an opportunity to examine the road surface in the area?

A Yes.

Q And isn't it a fact that the pavement was dry?

A Yes.

Q And isn't it a fact that there were no, let's say, skid marks on the paved portion, the asphalt portion, at the point in time where the defendant left the road surface? To the best of your knowledge, you didn't see any skid marks?

A I don't recall. There was lots of gravel around in there, though.

Trial trans. 275, 278–279.

The Wisconsin supreme court held that the refusal to give the affirmative defense instruction requested by petitioner was not error, stating

The only evidence offered by Dickinson was the defendant's speed on passing him between 65 to 70 miles per hour and the vague testimony as to gravel in the

area where the defendant left the paved portion of the road. He did not testify that the defendant's passenger affected the defendant's control of the motorcycle or that the road conditions or design caused the defendant to leave the roadway.... The proof offered for the affirmative defense was speculative and not direct evidence and could not rise to the level required of preponderance.

122 Wis.2d at 600–601, 363 N.W.2d 574.

I agree that the proof offered could not rise to the level of a preponderance of the evidence; indeed, it is doubtful that there was *any* evidence to support the giving of the affirmative defense instruction. Petitioner argues that, based on Dickinson's testimony, a jury could have concluded that road conditions or the passenger's actions caused the accident. However, a witness's description of possible accident causes is not evidence that such a cause was a factor in a given accident. By petitioner's logic, the trial court also would have been required to give an affirmative defense instruction if Dickinson had testified that a blown tire may cause a motorcyclist to lose control, even though there was no evidence that petitioner's tire failed.

■ Petitioner's argument that the "refusal to instruct on the affirmative defense was the actual equivalent of a directed verdict of guilty" because the "statute contained no real elements for the state to prove" is unpersuasive. The state had to prove, and did prove, beyond a reasonable doubt that petitioner caused the death of another by the operation of a vehicle, and that he operated the vehicle under the influence of an intoxicant.

I conclude that Wis.Stat. § 940.09 does not violate the due process clause, and that the trial court's failure to instruct the jury on the affirmative defense did not violate petitioner's constitutional rights. Accordingly, IT IS ORDERED that petitioner's petition for a writ of habeas corpus is DISMISSED.