**Frank ARMENIA, Petitioner–Appellant,**

v.

**Richard L. DUGGER, Respondent–Appellee.**

No. 88–3416.

United States Court of Appeals, Eleventh Circuit.

March 16, 1989.

Michael L. O'Neill, Asst. Federal Public Defender, Daytona Beach, Fla., for petitioner-appellant.

Margene A. Roper, Asst. Atty. Gen., Daytona Beach, Fla., for respondent-appellee.

Before RONEY, Chief Judge, HATCHETT, Circuit Judge, and HENDERSON, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this appeal, we determine that a Florida statute which imposes felony punishment on a strict liability basis does not violate the due process clauses of the Constitution of the United States. We affirm.

## FACTS

On December 2, 1983, a runaway automobile passed across the right-of-way in which Frank Armenia operated his automobile. Although a collision occurred, the state of Florida's accident reconstruction experts established that Armenia could not have avoided the collision. Jennings Cole Overstreet, a passenger in the runaway automobile, died from injuries sustained in the accident. Armenia's blood sample, taken immediately following the accident, revealed a blood alcohol level of .21; under Florida law, Armenia was legally intoxicated.

## PROCEDURAL HISTORY

The state of Florida charged Armenia with causing the death of Overstreet by operation of a motor vehicle while under the influence of alcoholic beverages. Fla. Stat. 316.1931(2) (driving while intoxicated manslaughter) [hereinafter the DWI-manslaughter statute].[1] The trial judge in the Circuit Court of Osceola County, Florida, at the conclusion of the case, instructed the jury on manslaughter using the standard jury instructions:

Before you can find the defendant guilty of manslaughter, the State must prove

---

1. Fla.Stat. § 316.1931 (1983) has been repealed and replaced by section 316.193 (Supp.1988). Section 316.1931 provided in pertinent part:

    Florida Statute 316.1931. Driving automobile while intoxicated; punishment.—
    (1) It is unlawful for any person, while in an intoxicated condition or under the influence of alcoholic beverages, any chemical substance set forth in s. 877.111, or any substance controlled under chapter 893 to such extent as to deprive him of full possession of his normal faculties, to drive, be in actual physical control of, or operate within this state any automobile, truck, motorcycle, or other vehicle. Except as provided in subsection (2), any person convicted of a violation of this section shall be punished as provided in s. 316.193.
    ....
    (2)(c) If the death of any human being is caused by the operation of a motor vehicle by any person while so intoxicated, such person shall be deemed guilty of manslaughter and on conviction shall be punished as provided by existing law relating to manslaughter.
    Fla.Stat. § 316.193 (Supp.1988) provides in pertinent part:

    316.193. Driving under the influence; penalties.
    (1) A person is guilty of the offense of driving under the influence and is subject to punishment as provided in subsection (2) if such person is driving or in actual physical control of a vehicle within this state and:
    (a) the person is under the influence of alcoholic beverages, any chemical substance set forth in s. 877.111, or any substance controlled under chapter 893, when affected to the extent that his normal faculties are impaired; or
    (b) the person has a blood alcohol level of 0.10 percent or higher.
    ....
    (3) Any person:
    (a) Who is in violation of subsection (1);
    (b) Who operates a vehicle; and
    (c) Who, by reason of such operation, causes:
    ....
    3. The death of any human being is guilty of DUI manslaughter, a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

the following three elements beyond a reasonable doubt. First, that Jennings Cole Overstreet is dead; second, the death was caused by the operation of a motor vehicle by the defendant; and third, that the defendant was intoxicated at the time that he operated the motor vehicle.

Over Armenia's objection, the trial court also gave the following instructions requested by the state:

The term 'caused by the operation of a motor vehicle by any person while intoxicated' is defined as the equivalent of stating that death resulted from the misconduct which had its inception at the time said person took control of the car and continued to operate it while not in possession of his faculties.

Proof of negligence in the operation of an automobile is not necessary to establish the offense of manslaughter by operation of an automobile while intoxicated.

The jury returned a verdict finding Armenia guilty of manslaughter, and the trial court sentenced him to twelve years imprisonment. Armenia appealed. In *Armenia v. State,* 479 So.2d 260 (Fla. 5th D.C.A.1985), the court affirmed Armenia's conviction, but certified to the Florida Supreme Court the following question as one of great public importance:

IS IT NECESSARY TO PROVE THAT THERE WAS A CAUSAL RELATIONSHIP BETWEEN THE MANNER OF OPERATION OF DEFENDANT'S MOTOR VEHICLE OR HIS INABILITY TO AVOID THE ACCIDENT BECAUSE OF HIS INTOXICATION AND THE DEATH OF THE VICTIM TO CONVICT FOR A VIOLATION OF SECTION 316.-1931, FLORIDA STATUTES (1983)?

The Florida Supreme Court answered the certified question in the negative and approved the state appellate court's decision. *Armenia v. State,* 497 So.2d 638 (Fla.1986). Citing *Baker v. State,* 377 So.2d 17 (Fla. 1979), the Florida Supreme Court held that it was not necessary to prove a causal relationship between the manner of operation of the motor vehicle or Armenia's ability to avoid the accident in order to convict him of manslaughter. According to the Florida Supreme Court, the Florida DWI-manslaughter statute does not require a specific causal connection between a defendant's intoxicated driving and the victim's death as an element of the crime of homicide by intoxicated operation of a motor vehicle. The Florida Supreme Court read the causation element of the DWI-manslaughter statute as requiring only that the state prove the victim's death resulted from the operation of a vehicle while the driver was intoxicated.

Having exhausted state remedies, Armenia filed a petition for writ of habeas corpus with the United States District Court for the Middle District of Florida. In the habeas corpus petition, Armenia challenged his conviction arguing that Florida's DWI-manslaughter statute is unconstitutional because it imposes felony punishment on a strict liability basis.

In analyzing Armenia's habeas corpus petition, the district court found the opinions expressed in *Caibaiosai v. Barrington,* 643 F.Supp. 1007 (W.D.Wis.1986) persuasive. In upholding the constitutionality of Wisconsin's drunk-driving manslaughter statute, the *Caibaiosai* court stated: [2]

The issue raised by petitioner's challenge to § 940.09 [Wisconsin's drunk-driving manslaughter statute] is not whether the legislature made a wise choice in defining the offense, but whether the statute offends a fundamental principle of justice.... It is significant that plaintiff can point to no case in which a court has invalidated a felony-murder conviction on constitutional grounds, although most felony-murder statutes require no proof of specific culpability with respect to the murder. Generally, the state is required to prove only the culpability specified for

---

**2.** Wis.Stat. § 940.09(1) punishes as a class D felony any person who (a) causes the death of another by operation or handling of a vehicle, firearm or air gun while under the influence of an intoxicant; Wis.Stat. § 940.09(2) provides an affirmative defense "if it appears by a preponderance of the evidence that the death would have occurred even if the actor had not been under the influence of an intoxicant."

the underlying crime. Despite scholarly criticism of such statutes that impose an additional penalty for the death of another without any independent proof of blameworthiness for the death, the courts have not held them invalid.

In this case, I am convinced that it is not fundamentally unfair to impose felony liability based upon proof that the defendant's operation of a motor vehicle caused the death of another and that the defendant operated the vehicle while under the influence of an intoxicant. Accordingly, I conclude that § 940.09 does not violate the substantive protections of the due process clause. [Citations and footnotes omitted.]

*Caibaiosai v. Barrington*, 643 F.Supp. at 1012–13.

Based on the same logic as expressed in *Caibaiosai*, the district court held that the Florida DWI-manslaughter statute was not fundamentally unfair nor violative of due process. The district court denied Armenia's petition for writ of habeas corpus, issued a certificate of probable cause for appeal, and granted Armenia the right to appeal without prepayment of costs.

## CONTENTIONS

Armenia contends that his conviction violates the basic notions of fundamental fairness enshrined in the due process clauses of the Constitution of the United States by creating a conclusive presumption that he caused the death of the victim. Armenia contends that the statute's revision during the pendency of this case supports his argument. Armenia views the Florida Supreme Court's interpretation of the DWI-manslaughter statute as: redefining criminal law contrary to basic notions of the presumption of innocence, antithetical to the definitions of crime and valid punishment, and contradictory to the moral foundation of the criminal law. Armenia asserts that the *Caibaiosai* case does not support the Florida Supreme Court's decision, and in fact, confirms the requirement of causation between a defendant's operation of a vehicle and the victim's death.

Thus, Armenia argues that his habeas corpus petition should have been granted.

The state contends that under Florida law, causation is not an element of DWI-manslaughter; therefore, the state is not constitutionally required to prove causation. The state also contends that dispensing with such a requirement does not result in a denial of due process because it is not fundamentally unfair to impose felony liability based on proof that the operation of a motor vehicle caused the death of another. The state argues that causing a death by operation of a motor vehicle while intoxicated evinces a mental attitude indicative of blameworthiness, which is deciding to drive while inebriated.

## ISSUES

Armenia raised the following issues on appeal:

(1) whether, by interpreting the DWI-manslaughter statute not to require causation, the Florida Supreme Court created an irrebuttable or conclusive presumption of causation, contrary to the due process principle that the state is required to prove beyond a reasonable doubt every element of the crime charged;

(a) whether the DWI-manslaughter statute required as an element to be proven by the state that the death of the victim was caused by the operation of a motor vehicle operated by the intoxicated person;

(b) whether the Florida Supreme Court has interpreted the causation element of DWI-manslaughter not to require proof that Armenia's operation of a motor vehicle caused the victim's death; and

(c) whether the net result of the court's interpretation created a conclusive presumption that an intoxicated driver involved in an accident from which a death ensued caused the death;

(2) whether we should reverse the district court's denial of the habeas corpus petition because the logic of *Caibaiosai* supports Armenia; and

(3) whether it is fundamentally unfair and a denial of due process to convict a person of what he did not do—cause the

death of a human being by the operation of a motor vehicle while intoxicated.

## DISCUSSION

Crime prevention is the primary responsibility of the states. *Irvine v. California,* 347 U.S. 128, 134, 74 S.Ct. 381, 384, 98 L.Ed. 561 (1954) (plurality opinion). Federal courts are reluctant to construe the Constitution as allowing federal intrusion upon the administration of justice by the individual states. *Patterson v. New York,* 432 U.S. 197, 201, 97 S.Ct. 2319, 2322, 53 L.Ed. 2d 281 (1977). It is normally within the power of the state to interpret and administer its laws, including strict liability criminal statutes, and its decisions are not subject to proscription under the due process clause unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *See Patterson* at 201–02, 97 S.Ct. at 2322–23; *Speiser v. Randall,* 357 U.S. 513, 523, 78 S.Ct. 1332, 1340, 2 L.Ed.2d 1460 (1985). In reviewing the issues raised by Armenia on appeal, we find that one is dispositive: Whether Fla.Stat. § 316.1931, the DWI-manslaughter statute, through the Florida Supreme Court's interpretation and the state's application, unconstitutionally denied Armenia due process of law because it did not require the state to prove causation.

Within the framework of this issue, Armenia contends that by interpreting the DWI-manslaughter statute not to require causation, the Florida Supreme Court has made that element of the offense an irrebuttable and conclusive presumption contrary to the due process principle that the state is required to prove every element of the crime charged beyond a reasonable doubt. Armenia asserts that under Fla. Stat. § 316.1931, the state must prove: (1) the intoxicated person (2) operated a motor vehicle (3) and by the operation of the vehicle, caused the death of a human being. Armenia argues that the due process clause requires the state to prove beyond a reasonable doubt all of the elements included in the definition of the offense. *See Patterson* at 210, 97 S.Ct. at 2327. Arme-

nia argues that the Florida Supreme Court has interpreted the third element not to require the state to prove that his operation of a motor vehicle caused Overstreet's death. Armenia contests the Florida Supreme Court's interpretation of the causation language of the statute to mean that the death "resulted from" the operation of a vehicle by the defendant, and that the negligence which supplies the intent element occurs at the time the intoxicated driver enters the vehicle. *See Baker v. State,* 377 So.2d 17, 18–20 (Fla.1979).

Armenia argues that the net result of the Supreme Court's interpretation created a conclusive presumption that an intoxicated driver who becomes involved in an accident from which a death ensues caused the death. Armenia contends that it is improper to forward to the unintended result the original act of negligence which is getting into the driver's seat of a vehicle while intoxicated. By carrying this negligent act to the point where the intoxicated driver becomes involved in an accident, without requiring the state to prove any specific act by the intoxicated driver which caused the accident, or any lack of due care because of his intoxicated condition which made the accident unavoidable, the Florida Supreme Court has created an irrebuttable or conclusive presumption that the intoxicated driver caused the accident which caused the death. The Florida Supreme Court's interpretation imposes strict liability not unlike felony-murder and statutory-rape statutes. *Baker* at 19.

Although Armenia does not challenge the Florida Supreme Court's prerogative to interpret the statute, Armenia contends that when the effect is to relieve the state of the burden of persuasion on the causation element of the offense, the result is a denial of due process which does not allow a conclusive presumption of causation. *Francis v. Franklin,* 471 U.S. 307, 313–17, 105 S.Ct. 1965, 1970–73, 85 L.Ed.2d 344 (1985).

The state of Florida contends that in accordance with the due process clause of the United States Constitution, it proved beyond a reasonable doubt every fact nec-

essary to constitute the crime of DWI-manslaughter. The state contends that the Florida DWI-manslaughter statute is a strict liability criminal statute. *State v. Sachs*, 526 So.2d 48 (Fla.1988).

The state argues that the due process clause is in no way implicated in this case as *Patterson* only requires the prosecution to prove beyond a reasonable doubt the elements included in the definition of the offense. Because causation is not an element of the offense of DWI-manslaughter, the state contends that it was unnecessary to prove causation. The state argues that "[t]he applicability of the reasonable-doubt standard has always been dependent on how a State defines the offense that is charged in any given case...." *Patterson* 432 U.S. at 211 n. 12, 97 S.Ct. at 2327 n. 12. The state correctly asserts that the legislature's definition of the elements of the offense is usually dispositive. *See McMillan v. Pennsylvania*, 477 U.S. 79, 85–86, 106 S.Ct. 2411, 2416–17, 91 L.Ed.2d 67 (1985).

The state further contends that it is not fundamentally unfair to impose felony liability based upon proof that Armenia's operation of a motor vehicle caused the death of another and that Armenia operated the vehicle under the influence of an intoxicant. *See Caibaiosai* at 1012–13. The state argues that constitutional limits exist beyond which states may not go in defining the elements of an offense. The state, however, establishes that no felony murder conviction has ever been invalidated on constitutional grounds, despite the fact that most felony murder statutes require no proof of specific culpability with respect to the murder and that the state is required to prove only the culpability specified for the underlying crime. *See Patterson*, 432 U.S. at 216, 97 S.Ct. at 2330. Because the penalty for felony murder is harsher than the penalty for DWI-manslaughter, the state

contends that it is hard to envision any fundamental unfairness in Armenia's sentence.

The Florida legislature revised the DWI-manslaughter statute while Armenia's case was on appeal in the Florida Supreme Court, and directly addressed the court's interpretation of the statute. To support his argument that the Florida law is currently ambiguous, Armenia contends that although the Florida Supreme Court continues to describe the statute as a strict liability criminal statute, a Florida District Court of Appeal has certified the following question to the Florida Supreme Court: IS THE HOLDING OF *ARMENIA V. STATE*, 497 SO.2D 638 (FLA.1986) STILL VALID IN LIGHT OF SECTION 319.193(3)(C) FLORIDA STATUTES (SUPP.1986)? *See Magaw v. State*, 523 So.2d 762 (Fla. 1st D.C.A. 1988).[3]

Armenia asserts that the holding of the Florida Supreme Court in his case was never valid and that the court disregarded the ordinary meaning of the words in the old statute while adhering to its own substitution of "resulted from" for the actual words of the statute "caused by." Armenia contends that the court's continued adherence to this reinterpretation, even after the 1986 revision, supports his argument that a change from the passive mood in the old statute, under which he was convicted, to the active mood of the verb "to cause" in the revised 1986 statute, which came into effect the day before the Florida Supreme Court issued its decision, was not a major change.

The state of Florida cites *Clowney v. State*, 102 So.2d 619, 621 (Fla.1958) to state: "[S]omewhere between the point of utter sobriety and the point of saturation, or immobility, the imbiber reaches the condition that makes him, at the will of a dangerous instrumentality, a motor car, a killer." Thus, the state argues that the

---

**3.** The Florida Supreme Court has answered the certified question in the negative. *Magaw v. State*, 537 So.2d 564, 14 Fla.L.Weekly 27 (Fla. 1989). The court affirmed Magaw's conviction of DWI-manslaughter, however, because "[t]he amendment to the statute did not become effective until October 1, 1986, almost three months

after the date of Magaw's accident." Although the Florida Supreme Court has now interpreted Fla.Stat. § 316.193(3) to require causation, Armenia is unaffected, as his accident occurred on December 2, 1983. The amendment does not affect accidents which occurred prior to the effective date of the amendment.

strict liability doctrine in the present case rightfully embraces the precept that causing death by operation of a motor vehicle while intoxicated itself evinces a mental attitude indicative of blameworthiness, which is choosing to drive in an intoxicated state.

The state argues that one who drives a motor vehicle in an intoxicated condition commits an intentional acts which creates known risks to the public. The state contends that this act is inherently bad and not excusable. The state argues that the courts and the legislature of the state of Florida have evolved the notion that drunk drivers menace the public safety and are to be discouraged by punishment. *See Ingram v. Pettit*, 340 So.2d 922 n. 9 (Fla. 1976).[4]

No federal constitutional violation exists in this case. The Florida Supreme Court's application and interpretation of Florida's DWI-manslaughter statute do not violate federal due process. Florida has chosen to take a harsh stance against drunken driving; it is Florida's prerogative to do so. Because we cannot establish a due process violation, Armenia's claim becomes only a question of state law. Logically, questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes. A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief. *Carrizales v. Wainwright*, 699 F.2d 1053, 1054–55 (11th Cir.1983). Accordingly, we affirm the district court's denial of habeas corpus relief.

AFFIRMED.

---

**4.** A strict liability offense is a more efficacious deterrent than any ordinary criminal statute because "a person engaged in a certain kind of activity would be more careful precisely because he knew that this kind of activity was governed by a strict liability statute" and because "the presence of strict liability offenses might have the added effect of keeping a relatively large class of persons from engaging in certain kinds of activity." Wasserstrom, Strict Liability in Criminal Law, 12 Stan.L.Rev. 731, 736–37 (1960).